## CLEVELAND TRUST CO v WHITE et

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided July 12, 1937

630

J. S. Morley, Cleveland, for plaintiff appellant.

M. B. & H. H. Johnson, Cleveland, Maurer, Bolton & Rees, Cleveland, Henderson. Quail, McGraw & Barkley, Cleveland, Sayre, Vail & Dorn, Cleveland, H. E. Elliott, Cleveland, and D. W Hornbeck, Cleveland, for defendants appellees.

## OPINION

By LEVINE, PJ.

This action comes into this court by the route of appeal on questions of law and fact and will therefore be considered de novo. Before arriving at the vital questions involved in this case, a brief statement of facts is necessary.

On October 2, 1913, Thomas H. White, executed and delivered to The Cleveland Trust Company, as trustee, a certain trust agreement. At the same time he executed a will. About eight months later, Mr. White died. The trust agreement provides for the disposition of the income and principal of the property of Mr. White during his life and after his death. It provides that the ultimate disposition of the income of Mr. White's property "and any surplus income accruing after the death of his children or any of them forthwith, shall be devoted perpetually for educational and charitable purposes in the city of Cleveland."

The trust agreement after setting forth the powers of authority of the trustee with respect to the management and control of the trust estate, provides that the actual net income derived therefrom shall be paid to Thomas White during his life-time. Discretion was vested in the trustee to make such advances from the principal of the trust from time to time as it may deem proper or necessary for his maintenance, support, comfort and enjoyment. It also provides in detail for the disposition of the estate and the income therefrom after the donor's death. The provisions with respect to such disposition after the donor's death are substantially as follows:

Certain specific money gifts were first provided for which the trustee was directed to pay on or before three years from the date of death, and from the net income derived from the remainder of the estate, after the payment of these specific gifts, the trustee was directed to pay certain annual sums by way of annuities for life to certain individuals. Two annual payments were directed to be made to certain charitable institutions, one of $1500.00 increasing after death of the widow to

$2700.00, to be paid to The Daytona Educational and Industrial Institute (now known as Bethune-Cookman College) and one of $500.00 to The Dorcas Old Ladies' Home (now known as The Dorcas Invalid Home). After providing for these specific gifts and annuities, the trust agreement provides as respects the remainder of the net income derived from the trust estate, as follows:

"The remainder of the net income derived from the trust estate, together with such as may accrue upon the termination of the foregoing annuities, shall be divided between my surviving children, other than Ella White Ford, and upon the death of any child leaving issue surviving, one-half of the share otherwise payable to such child, shall continue to be paid to the issue of such child per stirpes. Upon the death of any child without leaving issue surviving, or upon the extinction of his or her issue, so much of such portion shall be divided among my other surviving children as the trustees may deem wise or necessary for their comfortable support."

"It is my intention that such remainder of the income derived from the trust estate, shall be divided equally among my surviving children, and upon the death of any child one-half of the portion of the income otherwise payable to such child shall continue to be paid to his or her issue per stirpes, excepting to my daughter Ella White Ford, and her issue, as to whom specific provisions have hereinbefore been made, but all such payments of income directed to be made to my children or their issue, including my daughter, Ella White Ford, and her issue, are subject, however, to the right hereby conferred upon the trustee to temporarily withhold or completely discontinue, in whole or in part, any such payments, due consideration being given to the needs, earning capacity, possession or other resources and habits of life of each of my children, and of their issue. Any income so withheld, or discontinued, may, at any subsequent time or times, be given to the child or issue from whom the same was withheld, or to the wife, husband or issue of such child or issue, or distributed to my other children or their issue, or retained and added to the principal, it being my intent that the trustee shall have power to make unequal distribution of income between any of my children or between any of their issue, according to the several needs and habits of

life of such children and issue, but shall not exercise such power except for good cause in the judgment of the Board of Directors of The Cleveland Trust Company.

"The foregoing payments of income to my children (other than my daughter Ella) and their issue shall continue in the manner above provided for a period of twenty-one (21) years after the death of the last survivor of my children (other than my daughter Ella) or until the extinction of the issue of my children prior thereto, after which period the net income derived from the trust estate, and any surplus income accruing afer the death of my children or any of them forthwith, shall be devoted perpetually for educational and charitable purposes in the city of Cleveland. Realizing the impossibility of foreseeing future conditions, I do not prescribe the methods by which my purpose shall be accomplished. It is my present thought that the income be used for education in part in assisting young men who are desirous to obtain a technical education at Case School of Applied Science, either by way of scholarships, loans or gifts, the amount and manner of such distribution to be made according to the absolute discretion of such trustee; also for scientific research, care of the sick, aged or helpless, to improve living conditions or provide recreation for all classes. It is my purpose and desire that such income be expended wisely in ways that will best make for the moral and physical improvement of the inhabitants of the city of Cleveland, regardless of race or color or creed, according to the unfettered discretion of the trustee. I therefore authorize and direct the trustee to distribute the net income after the termination of the trust for my children and their issue, at such times and in such manner according to its absolute discretion as will best accomplish my purpose, in the judgment of the trustee."

We shall later refer to the other portions of the trust agreement which we deem pertinent to a solution of the questions involved.

The will of Thomas H. White which was executed at the same time as the trust agreement, follows the usual form employed in the drawing of wills. Then follows two paragraphs:

"1. I give, devise and bequeath all of my property of whatsoever character and wheresoever situate to The Cleveland Trust Company, of Cleveland, Ohio, to be held,

managed, controlled and disposed of by it as trustee for the uses and purposes and upon the terms declared in a certain settlement of trust heretofore on this day executed by and between myself and said company to which reference is hereby made as fully and with like effect as if herein re-written at length.

"2. I nominate and appoint The Cleveland Trust Company executor of this my last will and testament, hereby conferring upon it as such executor all of the powers conferred upon said company as trustee in said settlement of trust, and I desire that said trust company be not required to give bond either as executor or as trustee."

Provision 1 gives no detailed disposition of the property but devises and bequeaths all of his property "to be held, managed and controlled and disposed of by it as trustee for the uses and purposes, upon the terms described in a certain trust heretofore on this day executed by and between myself and said company to which reference is hereby made as fully and with like effect as if herein rewritten at length."

Mr. White died on June 22, 1914, within a year from the making of the trust agreement and the will. The will was admitted to probate and The Cleveland Trust Company was appointed executor. The appellees contend that the alleged trust agreement cannot be regarded in law as a disposition of the property by means of a trusteeship during the lifetime of Mr. White but that it must be viewed as testamentary in character, hence of no validity; that the will executed at the same time with the alleged trust agreement, created a testamentary trust to take effect upon the death of the testator. It is therefore urged by the appellees that under §10504-5, GC the provisions contained in the trust agreement and to which reference is made in the last will and testament of Mr. White, called the educational and charitable provisions, are void and invalid as the testamentary disposition was executed within one year of the death of the testator.

The specific instruction which The Cleveland Trust Company asks the court to give, is the construction of paragraph 24 of the trust agreement which reads in part:

"And upon the death of any child leaving issue surviving, one-half of the share otherwise payable to such child shall continue to be paid to the issue of such child per stirpes."

It will be noted that no specific disposition is made of the other half. Mr. Walter White, under the provisions of the trust agreement, received an equal share with the other children of Thomas White. When Mr. Walter White died, his surviving children received but one-half of what their father formerly received. The other half, which was to be paid to Walter White, remains undisposed of. The appellant contends that this undisposed half of the share which belongs to Walter White during his lifetime, should be immediately applied to charitable and educational purposes. If the appellees contention that the provisions of the trust agreement are merely testamentary in character and that reliance for the disposition of the trust estate must be had solely on the last will and testament executed by Thomas White, it must follow that the provision for charitable and educational purposes contained in the trust agreement is invalid as having been made within one year of the death of the testator. If this contention is upheld there would be no need for this court to construe the particular provision concerning which instructions are sought. We are, therefore, face to face with the principal point of difference. Was the disposition of the property made by Thomas White during his lifetime in the form of a trust agreement a completed trust,—in other words, an executed trust? Was this disposition provided for in the trust agreement an incomplete trust, in other words merely an executory trust?

The trust sought to be established by the trust agreement must be regarded as a voluntary trust.

"A person holding property, real or personal, and intending to make a voluntary disposition of it for the benefit of another may do so in either one of three modes: He may make a simple conveyance or assignment of it directly to the donee, so as to vest in the latter whatever interest and title the donor has, without the intervention of any trust; he may make a transfer of it to a third person upon trusts declared in favor of the donee; he may retain the title and declare himself a trustee for the donee and thus clothe the donee with the beneficial estate." Pomeroy on Equity Jurisprudence Vol. 3, p. 1867-69.

A voluntary trust in its essence is merely a gift. The general principle of law relating to gifts apply to voluntary trusts. A promise to make a gift is of no binding

effect as it is without consideration. To make a gift operative and enforcible it must be accompanied by the delivery of the property given. Likewise, in voluntary trusts the property sought to be given away or disposed of through the instrumentality of a trustee must be accompanied by a delivery of the property sought to be disposed of. If it be real estate, the settlor or donor in order to create a valid trust must execute and deliver deeds of conveyance to the trustee. If the property sought to be disposed of by means of a voluntary trust consists of personalty it must, as a rule, be accompanied by the delivery of such personalty to the trustee. In order to create an enforceable voluntary trust, such conveyances and delivery must be made of the property involved as to confer upon the trustee a legal title. Generally speaking if that be done, a trust is created. If the acts and declarations of the trustee fall short of what is necessary to confer upon the trustee legal title to the res of the trust estate, it is regarded as an executory or incomplete trust.

A perusal of the trust agreement leads us into entanglement. We shall refer to some of the sections of the trust agreement. Article I, §1, provides.

"I, Thomas H. White, of Cleveland, Ohio, have this day sold, transferred, conveyed, assigned, delivered and set over unto The Cleveland Trust Company of Cleveland, Ohio, as trustee, certain real estate, a description of which is given in Schedule A, and certain stocks, bonds, securities, choses in action, household goods, bills and personal effects, a description of which is given in Schedule B, hereby transferring and conveying all property of which I am possesed, all of which property is to be held, managed, controlled by The Cleveland Trust Company as trustee."

The property referred to in Schedule A, consisted of real estate and was delivered to the trustee, by means of deeds which were executed by Thomas H. White to The Cleveland Trust Company. These deeds were not recorded. The personal property consisted of securities, stocks, bonds, choses in action, household goods, bills and personal effects, as described in Schedule B, were all delivered to The Cleveland Trust Company with the exception of household goods and personal effects. As to the property so conveyed and delivered it would seem upon the surface that the require-ments for the creation of a voluntary trust were complied with.

Section 2 empowers the trustee to

"Sell, release, transfer or exchange all or any part of said property and all property that may hereafter from time to time be substituted therefor or added thereto (excepting only stock of The White Sewing Machine Co. or The White Co., with reference to which special provision is hereinafter made) at such prices and upon such terms and conditions and in such manner as it may deem best; to. execute and deliver any proxies, powers of attorney or agreements that the trustee may deem necessary or advisable in administering this trust."

Section 3 confers upon the trustee broad powers of investment, concluding with the following language:
"It being my intent that the trustee shall have unrestricted power to manage the property held by it hereunder as if the absolute owner thereof, subject however to the power reserved during my lifetime as hereinafter provided."

Sections 5 and 6 deal with the stock of The White Company and The White Sewing Machine Company. The sections following enumerate additional powers and duties of the trustee.

Beginning with §14, inclusive under the heading, "Rights reserved by donor" we find one provision that the entire income derived from the trust shall be paid to Thomas White during his lifetime; the free use and enjoyment of all real estate conveyed under the trust is reserved to Thomas White during his lifetime. It provides also that the trustee shall, upon request of the settlor, execute any and all instruments necessary to vest in him the voting power upon stocks held under this trust.

It provides that the trustee shall endeavor to secure the settlor's written approval to sell all property and securities and investments and re-investments whenever practicable. It provides that during the lifetime of the settlor the trustee shall not sell any shares of stock of The White Company or The White Sewing Machine Company unless first obtaining his approval in writing thereto.

Section 18 will be cited in full as much of the discussion and argument revolves around it:

"18. I further reserve the right, **with the approval of the directors of the Cleveland Trust Company**, at any time or times to revoke the settlement hereby evidenced, either in whole or in part, as well as the right to modify in any respect the terms of such settlement. Any such revocation or modification to be evidenced by written instrument attested and acknowledged by me and delivered to the trustee. To whatever extent this settlement may be so revoked the trustee shall thereupon convey, transfer and deliver to me such portion or all of the property constituting the trust estate as may have been withdrawn under such revocation."

"19. I further reserve the right to add to the principal of this trust from time to time any additions so made to be upon the same trusts herein expressed."

. It is claimed by appellees that the instrument of trust while purporting to confer legal title upon the trustees in the realty and personalty comprising the trust estate, that the grantor held back for himself broad rights and powers so as to reduce the interest granted to the grantee and to make it in fact merely a user; that the interest theoretically given to the grantee be so reduced and whittled away by the reservation in favor of grantor, that the court is bound to declare that the grantee received no interest during the life of grantor, and that therefore the instrument is in fact but an attempted will.

As the appellees construe the rights reserved to the settlor, contained in the trust instrument, the settlor has so far reduced the purported interest conveyed to the trustee so as to amount to a mere agency authorizing the Cleveland Trust Company to act in his behalf and under his instruction; that the reservations show complete dominion on the part of the settlor and allowing little, if any, discretion to the trustee. It is true that some measure of control was reserved to the settlor in administrative matters. (1) Voting rights of stocks as respects which proxies were to be given by the trustee to the settlor when and as requested. (2) Stock of the White Company and The White Sewing Machine Company could not be sold without the settlor's written approval and as to other securities and property the trustee should endeavor to secure the written approval to sales, investments and re-investments whenever practicable. (3) The trustee was not required to see to the payment of taxes or insurance unless requested, or assume responsibility as respects to returns of the property for taxation. Mr. White, however, had no initiative or affirmative control in the matters of the sales of any property or the making of any investments. At most, the reservations confer upon him a mere veto power through the right to withhold his approval in case of the sale of The White Company and The White Sewing Machine Company stock. The reservation of the right to vote the shares of stock in the trust does not, in our opinion, constitute control of the stock to himself, title to which remains in the trustee and could not be disposed of or dealt with except by the trustee.

In the case of Davis v Rossi, 326 Mo. 911, a similar question was involved. It was a revocable trust with the income payable to the settlor during his life. Provision is made at his death for his widow and certain charitable purposes, the remainder to be distributed to his children. Amongst other questions the court deals with the reservation of the right to direct the voting of shares of stock. The court said:

"Nor was it inconsistent with a completely executed trust for him to reserve the right to vote or direct the voting of such shares of stock and the right to hold such offices in a corporation as he desired; that was not a reservation of title but of reasonable powers coupled with the trust for the protection of his equitable right to the net income of the property during his lifetime."

We must keep in mind the distinction between a power which reserves in the settlor the right to dispose of the trust property or any part thereof, and a power which is merely supervisory for the protection of the settlor's right to the net income of the property during his lifetime.

This statement is consistent with the general statement of the law as to the creation of voluntary trusts. Equity looks to substance and not to the form. We may well conclude that the mere form of a trust instrument conveying legal title to a settlor is not decisive of the question as to whether or not it is a completed trust and if the trust instrument so restricts the power and discretion of the trustee so as to place entire control in the settlor, the trustee becomes a mere agent of the settlor. But a mere reservation of power to withhold approval from the trustee in the making of

investments or the exercise of other particular powers, does not destroy the trust relationship nor does the trustee become a mere agent. The mere reservation of what may be termed as a veto power does not amount to such complete control and dominion by the settlor over the trust property as to constitute the trustee a mere agent.

A reading of the entire trust instrument and delving into the substance of its provisions leads us to the conclusion that the trustee was thereby invested with initiative and discretion to dispose of some of the property, to make investments and re-investments and to do all acts necessary for the preservation of the trust estate. The rights reserved to the settlor amount merely to a veto power in some instances.

Another question presented for our consideration is as to the effect of §18 of the trust instrument wherein the settlor reserves to himself the right to revoke the settlements evidenced by the trust agreement either in whole or in part as well as the right to modify in any respect the terms of the same.

The general statement of the law on this subject is found in sub-paragraph 1 of §57, Vol. 1, Restatement of Trusts as follows:

"Where by the terms of the trust an interest passes to the beneficiary during the life of the settlor, the trust is not testamentary merely because the settlor receives a beneficial life estate or because he reserves in addition a power to revoke the trust in whole or part and a power to modify the trust."

The case of Stone v Hackett, 76 Mass. 227, is in harmony with the holding in the majority of the states. Quoting from the opinion:

"It was suggested by the learned counsel for the widow that the donor never parted with his power of dominion over the property, because he retained a right to annul or revoke the trust. But this seems to us quite immaterial. A power of revocation is perfectly consistent with the creation of a valid trust. It does not in any degree affect the legal title to the property. That passes to the donee and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. If this right is never exercised according to the terms in which it is reserved, as in the case at bar, until after the death of the donor, it can have no effect on the validity of the trusts or the right of the trustee to hold the property."

We must bear in mind that in the instant case such power of revocation was never attempted to be exercised. It must be further observed that this power of revocation was not an absolute power, as the language clearly indicates. It reads:

"I further reserve the right, **with the aproval of the Board of Directors of The Cleveland Trust Company * * *.**"

The Cleveland Trust Company can withhold its approval or it may grant it under the terms of the instrument. The phrase "with the approval of the board of directors" was not intended to be meaningless. It has been suggested by the appellees that this phrase was inserted for the settlor's protection so as to preclude a revocation in the event the settlor became mentally incapacitated. This seems to us not a sufficient explanation. If the settlor became of unsound mind he could not legally exercise any power of revocation even if this condition had not been imposed and there would be no necessity to insert the provision. Where discretion is conferred upon a trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion. There is no provision in the trust instrument describing the conditions under which the approval of the directors of the Cleveland Trust Co. must be given. According to the wording of the provision the power of the trustee to withhold such approval to revoke seems absolute.

We quote from Restatement of Trusts, Vol. 2, p. 955:

"If the settlor reserves a power to revoke the trust only with the consent of the trustee, he cannot revoke the trust without such consent. Whether the trustee can properly consent to the revocation of the trust and whether he is under a duty to consent to its revocation depend upon the extent of the power conferred upon the trustee by the terms of the trust. To the extent to which discretion is conferred upon the trustee, the exercise of the power is not subject to the control of the court, except to prevent an abuse by the trustee of his discretion. (See §187)."

In view of this statement it becomes unnecessary to discuss the effect of the first opinion in **Union Trust Co. v Hawkins, 121 Oh St 159,** and of the syllabus in **Worthington v Redkey, 86 Oh St 126,** because in none of these cases was the power of revocation so limited as to require the approval and consent of the trustee for the exercise thereof.

It is our conclusion that as to those assets which came into the hands of The Cleveland Trust Company ██ during the life time of Thomas H. White, that a completed trust was created. The limitation of the statute as to charitable bequests applies only to disposition of property ██ erty by will. A man may, if he so desires, give away property during his life time for a charitable purpose and in that way lawfully evade the statute which invalidates bequests to charity by will made within one year of death. When the trust property was delivered to The Cleveland Trust Co., by Thomas H. White, a legal title was conferred upon the Cleveland Trust Company. The beneficiaries named in the trust instrument became vested immediately with a beneficial interest, even though the enjoyment of such interest was, under the terms of the instrument, postponed until the happening of certain events.

These observations fully dispose of the second case (The Cleveland Trust Co. v Windsor T. White et al, No. 15568) which is here on appeal, wherein The Bethune-Cookman College is appellant.

It is our opinion therefore that the undisposed of half of the share which Walter White enjoyed during his ██ lifetime must under the terms of the trust instrument, be forthwith devoted to educational and charitable purposes.

We have thus far dealt with the validity of the trust agreement as to real and personal property actually conveyed or delivered to the trustee during the lifetime of Thomas White. There are certain assets which came into the possession of the trustee after Mr. White's death. As to these subsequent assets no valid trust was created by the trust instrument. To constitute a completed gift of personal property it must be delivered since the same was merely a voluntary trust. The omnibus clause contained in the trust instrument is only operated as to property either

**Headnote 9.**

conveyed or delivered to the trustee during the lifetime of Mr. White.

It is urged on the part of appellant that a person may create a trust by declaring himself as holding certain property in trust and that a trust so created will be enforced by courts of equity and that the grant under the trust instrument by the general description of the omnibus clause in such instrument may be construed as a declaration of trust by Thomas H. White making himself trustee as to all property which he retains possession of and that under the broad language of the trust instrument the same is tantamount to an equitable assignment of such property of which he retained possession, to the trustee, The Cleveland Trust Company. With this view we do not agree. We have elsewhere in this opinion set forth the three modes in which voluntary trusts may be created.

"In either of these modes, if the transaction is imperfect and executory, equity will not aid nor enforce it; and if the intention of the party is to adopt one of the methods a court of equity will not resort to either of the other methods for the purpose of carrying it into effect. Whenever the party intends to make a transfer directly to the donee, he must do all that is necessary, according to the nature of the property, to pass and vest the title, by valid conveyance in case of real property, and by valid assignment in case of personal property, and generally accompanied by an actual delivery of chattels and things in action where the donor is the legal owner. Where the donor shows an intention to adopt this first method, and thus to vest the property directly in the donee, and the act of donation is simply an assignment of any form, but is imperfect so that it does not pass the title, a court of equity will not treat it as a declaration of trust constituting the donor himself a trustee for the donee; an imperfect voluntary assignment will not be regarded in equity as an agreement to assign for the purpose of raising a trust. If the donor adopts the second or third mode, he need not use any technical words, or language in express terms creating or declaring a trust, but he must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare a trust in himself." Pomeroy on Equity Jurisprudence, Vol. 3, page 1869-73.

It is clear that in the case at bar Thomas H. White intended to create a trust by naming The Cleveland Trust Company trustee, and since he has chosen this method a court of equity will not resort to any other method in order to create a trust.

Much stress has been laid by counsel for appellant on the effect of a certain agreement entered into between Elizabeth T. White the widow, and the four children namely, Windsor T. White, Walter C. White, Rolland H. White and Ella White Ford. Under this agreement in consideration of certain increased amounts payable to her from the trust estate the widow surrendered and relinquished all her rights in the estate other than the provision made for her by the trust agreement and by a previous per-nuptial agreement and the four children ratified and accepted the provisions made for them by the trust agreement and waived all right which they might have as heirs at law or to next of kin of Thomas H. White.

In view of our findings that the bequest for charitable and educational purposes is a valid bequest and that the trust instrument is a valid instrument which created a completed trust, this consideration becomes of but little importance.

As to property which came into the possession of the trustee after the death of Thomas White, and which is denominated "subsequent assets" and which under the holding of this court is not comprised in the trust agreement, it may well be claimed that the heirs of Thomas H. White have some rights in such property. It may then become material as to the effect of this agreement signed between the widow and the four children. However, we are of the opinion that the agreement has no binding effect since the widow is not here to claim its enforcement. The Cleveland Trust Company and the beneficiaries under the trust instrument were strangers to this agreement and are not in position to seek the aid of a court of equity to enforce a private agreement between Elizabeth T. White and the four children.

A journal entry will be prepared in conformity with the views herein expressed.

1. The two documents offered in evidence consisting of two legal opinions, one by Mr. Tolles and the other by Mr. John G. White, were admitted in evidence. Exceptions may be noted.

2. Motion to dismiss the appeal is overruled. Exceptions.

TERRELL, J, concurs in judgment.
LIEGHLEY, J, dissents.

## DISSENTING OPINION

By LIEGHLEY, J.

It is deemed advisable that I state briefly my reasons for my decision.

On October 2, 1913, Thomas H. White executed and delivered to The Cleveland Trust Company a so-called trust agreement by the terms of which he conveyed and transferred to the trust company real and personal property of a value in excess of two million dollars. The many parcels of real estate were enumerated in a schedule attached to the agreement. The stocks, bonds and securities were also listed in a schedule attached to the agreement and closing with an omnibus clause worded to comprehend those then possessed as well as those to be thereafter possessed including moneys then or thereafter possessed including moneys then or thereafter on deposit in banks. On October 17, 1913 and October 24, 1913, additions were made to the trust estate in the hands of the trust company upon the same terms and conditions recited in the trust agreement.

Thomas H. White died June 22, 1914, less than one year after the date of the execution of the trust agreement.

On the same day, October 2, 1913, said Thomas H. White executed a last will and testament in which The Cleveland Trust Company was named as executor and by the provisions of which all property of which he may die seized or possessed shall pass to The Cleveland Trust Company to be held, managed and distributed in accordance with the terms and directions of the trust agreement contemporaneously executed.

This action was instituted in the lower court by The Cleveland Trust Company as trustee, against the various defendants named herein for instructions with respect to certain items and provisions of the trust agreement about which it is said there may be some ambiguity or uncertainty in meaning and intent. By the pleadings filed by the various parties to this action the outstanding issue for determination arose in respect to the exact nature and character of the trust agreement and will. It is contended by the plaintiff that the trust agreement evidences and constitutes a completed gift inter vivos and is legally valid. It is contended by certain defend-

ants that the trust agreement is necessarily incorporated in the last will and that the legal effect of the execution of the trust agreement and the will is testamentary.

As stated during the hearing, it has always been my understanding of the law generally that the execution of a trust agreement by the terms of which present possession, title and dominion of property is passed to a trustee that such transaction constitutes a valid gift inter vivos although the settlor reserves a beneficial interest and reserves a right of revocation, the exercise of which is dependent upon the happening of a subsequent contingency at his election. Excepting the rights of creditors, he is merely doing with his property during his lifetime as he pleases. His right to revoke is personal to him. No heirs at law or next of kin as such have any vested interest in the property of an ancestor while he is living. The right to alienate is an attribute of the complete ownership of private property. If he elects to give it away by passing absolute title and dominion with a string tied to it during his life to guarantee his own security, it would seem that he is only doing with his property what he pleases.

This general proposition seems to be sustained by the greater weight of authority as announced in Restatement of the Law of Trusts:

"Section 57. (1) Where by the terms of the trust an interest passes to the beneficiary during the life of the settlor, the trust is not testamentary merely because the settlor reserves a beneficial life estate or because he reserves in addition a power to revoke the trust in whole or in part and a power to modify the trust."

It is safe to say that able and eminent lawyers of this bar who have to do with such affairs, have for years recognized a family settlement trust agreement as legal and valid when properly executed accompanied with present delivery of title and control although containing reservations as in this restatement recited. No case involving a trust agreement so complicated as the one at bar and by its terms not to be fully executed for many years after the death of the donor has been before the Supreme Court so that the legal status of a truly family settlement trust agreement may be fixed and determined. In the principal cases cited the trust agreement terminated upon the death of the donor. Such

an agreement as in the case at bar may present additional and different considerations.

The defendants deny that this general proposition is controlling in the case at bar. Two cases are cited upon which chief reliance is placed. **Worthington v Redkey, 86 Oh St 128; Union Trust Company v Hawkins, 121 Oh St 159.**

The Worthington case was decided in 1912. This decision announced the rule that the legal title must pass from the creator of the trust as well as dominion and control of the trustee in order to constitute a valid gift inter vivos and it seems to hold that the reservation of a right of revocation defeats the theory of relinquishment of title and dominion and defeats the gift.

At the time the Worthington case was decided, §8617, GC read as follows:

"All deeds of gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making them, shall be void and of no effect."

This section was amended, effective in August, 1921, by which amendment the remainder of the section was added and the entire section caused to read:

"Sec 8617 GC. All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person or persons making the same shall be void and of no effect, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he may lawfully grant to another, including the power to alter, amend or revoke such trust and such trust shall be valid as to all persons, except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court of equity, at the suit of any creditor or creditors of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same."

It is to be observed that the White trust agreement was executed in October, 1913, approximately eight years prior to this amendment.

The Hawkins case was first decided in May, 1928, and the first decision, from the language of the syllabus, followed the

Worthington case in principle. This case was reviewed and decided a second time upon rehearing in 1929 in which decision the former holding was reversed and the court deemed it necessary to take a contrary view by reason of the application of the amendment to §8617, GC.

The first and second paragraphs of the syllabus of the first decision are almost synonymous with the first and second paragraphs of the second decision.

There are many points of similarity in the trust agreement in the Hawkins case and the trust agreement in the case at bar. However, the trust agreement in the Hawkins case terminated upon the death of the donor. The Hawkins trust agreement was sustained but its validity was expressly grounded upon the amendment of the statute in 1921 as evidenced by the third paragraph of the syllabus. The Hawkins agreement was modified or supplemented subsequent to the date of the amendment and its validity sustained as of that date.

It is urged that the law of the Worthington case and the law of the first decision of the Hawkins case necessarily controls the case at bar for the reason that the agreement was executed in 1913, eight years prior to the amendment of the statute. These two cases receive rather extended discussion in **Ohio Jurisprudence under the title "Trusts," Volume 40, §39, page 172.**

If this be correct, then the appellant cannot prevail. The transaction of the trust agreement and the will must be held to be testamentary in character. The charitable bequests are void because executed within one year of his death.

. However, assuming that the general rule of the above restatement be eventually pronounced to be the law of Ohio, did the settlor by the terms of the agreement place his affairs within the protection of the rule? Was such dominion and control passed or was the trustee merely the managing agent for the donor during his life?

Mr. White, at the time of the execution of the trust agreement, executed deeds of conveyance and delivered same to the Cleveland Trust Company. He transferred his certificates of stock duly endorsed. He did not transfer his bank accounts. Although the language of the trust agreement transferred everything at once, over one hundred thousand dollars of property remained in his possession at his death. To what extent the settlor transferred title, dominion and control to and over the prop-

erty placed in trust can best be determined by reference to the agreement itself and the rights expressly reserved by him. He did reserve a beneficial life estate as well as a power of revocation.

Notwithstanding the rights reserved by the donor in the trust agreement, do the terms of the agreement constitute a valid gift inter vivos or is the same defeated by the other conditions and provisions of the instrument itself? It is not so much what the donor and trustee did in pursuance of the executed agreement. Much more is dependent upon the potential powers reserved as expressed by the agreement.

Paragraph three of the so-called trust agreement by its terms granted full power to the trustee to invest and handle the assets of the trust in such manner as it deems best, "subject however to the power reserved during my lifetime as hereinafter provided." Paragraph 14 required the trustee to pay the net income to the donor in quarterly installments or oftener during his life and in addition such further sums from the principal as it may deem proper or necessary for his needs.

By the terms of paragraph 18, the donor reserves the free use and enjoyment of the real estate. It is provided that he will see to the payment of taxes, maintain the properties and look after the insurance. Upon request the trustee shall vest in the donor the voting powers upon the stocks held in the trust.

By paragraph 16 the trustee is required to secure the written approval of the settlor to any sale of property and securities, investments and re-investments. The trustee shall not sell any stock of the White Company or The White Sewing Machine Company unless approved in writing by the donor.

By paragraph 17 the donor relieves the trustee of any duty or responsibility for making tax returns upon the property held in the trust and assumed and retained that responsibility himself.

. By paragraph 18 the right of revocation is reserved either in whole or part as well as the right to modify in any or all respects the terms of such settlement.

To whatever extent the settlement is revoked it becomes the duty of the trustee to transfer and deliver such portion of the property withdrawn by the revocation.

By the terms of paragraph 10 of the instrument, the trustee is granted full right to make advances or to borrow money either before or after death, to pay the

debts of the donor. It is immaterial whether the debts existed at the time of the settlement or were subsequently created. By reserving the right to create subsequent debts the power of indirect control is expressly retained over the corpus of the trust estate. While by the terms of paragraph 16 the approval of the board of directors of the trust company is required to effect a revocation of the trust yet the unlimited power to create subsequent debts with the express provision in paragraph 10 that the same must be paid by the trustee may have the effect of nullifying and terminating the trust estate at the will of the settlor during his lifetime.

It seems to me that the terms and conditions of this trust instrument examined by its terms and provisions alone, without reference to the conduct of the settlor during his lifetime and the trust company as trustee with respect thereto, that the relation of the settlor and the trust company is more nearly expressed and comprehended within another paragraph contained in Restatement of the Law of Trusts, as follows:

"Section 57. (2) Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with."

Mr. White retained his bank books. They were delivered to the trustee after his death. He made deposits and withdrawals as he did before the agreement although transferred by it as part of the trust estate.

He retained the voting rights of his stocks. His written approval should be secured for sales of or investments in properties and securities. The trustee held the certificates duly endorsed. He retained further control.

He transferred legal title to his real estate by deeds. He made tax returns, paid the taxes and insurance. He retained free use and enjoyment of his real estate. It is very probable that he handled the property after the same as before.

By paragraph 3 full unrestricted power to manage all property is given the trustee as if it were the absolute owner thereof and thereafter in the same instrument he proceeds to take all that power away, leaving to the trustee little more than the bare legal title.

It is said that such rights reserved are justified in a careful effort to protect his income for life. Such claim runs contra and rebuts any theory of a gift inter vivos.

Without repeating, it seems to me that the donor constituted the trustee his agent more nearly than any other relation. He said, here is my real estate and here are my securities. You have legal title thereto. However, during my lifetime I shall retain my say in the management and handling thereof. He retained such power to control the discretion and judgment of the trustee as to details of the administration of the trust that it was the administration thereof by the settlor, rather than that of the trustee.

The trial court so concluded. The decree herein should hold the entire transaction of trust agreement and last will to be testamentary.