STEPHENSON, Appellee,

v.

STEPHENSON, Appellants.

[Cite as *Stephenson v. Stephenson,* 163 Ohio App.3d 109, 2005-Ohio-4358.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 04CA0067.

Decided Aug. 24, 2005.

---

**17.**   See *State v. Robinette,* supra, 80 Ohio St.3d at 239–240, 685 N.E.2d 762.

Charles Kennedy, for appellee.

Robert N. Gluck, for appellant.

WHITMORE, Presiding Judge.

{¶ 1} Appellant, Helen Stephenson, has appealed from the Wayne County Court of Common Pleas, Probate Division, which decreed certain assets to be the property of the decedent's inter vivos trust, as had been asserted by plaintiff-appellee, Eric Stephenson. This court affirms.

I

{¶ 2} Robert E. Stephenson, now deceased, was married to appellant at the time of his death. Robert Stephenson and appellant had no mutual children, but each had children from a prior marriage. Appellant had five adult children from

a prior marriage, including an adult son, Douglas N. McConnell. Robert Stephenson had four adult children from his first marriage: Eric Stephenson, Kimberly Spence, Mary Kay Stephenson, and Mark E. Stephenson.

{¶ 3} On October 31, 2000, Robert Stephenson properly executed two testamentary documents: the "Robert E. Stephenson Revocable Trust Agreement" and the "Last Will and Testament of Robert E. Stephenson." In the trust, Robert Stephenson created a revocable, inter vivos trust; named himself as trustee with Douglas McConnell as successor trustee; designated beneficiaries as himself, appellant, and his four children; and attempted to place certain assets into this trust. Specifically, the trust states, "I have caused or will cause the policy or policies of insurance on my life listed in the attached Schedule A to be made payable to the Trustee, as beneficiary, and I hereby transfer the other property listed in Schedule A to the Trustee." Schedule A listed exactly two items: "Merrill Lynch IRA" and "Merrill Lynch Brokerage Accounts." In the will, Robert Stephenson named appellant as executor, instructed that his debts be paid out of his estate assets, bequeathed his personal property to appellant, and devised his residuary estate to the trust.

{¶ 4} Robert Stephenson died on September 7, 2002, and the will was admitted to probate. Appellant, as executor, filed a schedule of assets, which was later amended to include additional assets. Eventually, appellee Eric Stephenson filed a complaint[1] for declaratory judgment, which essentially requested the probate court to declare that four particular assets were property of the trust: a coin collection, a Merrill Lynch IRA, Merrill Lynch brokerage accounts, and a GMAC life insurance policy. As executor of the will, appellant contended that the coin collection was personal property, which was bequeathed to her in the will. As successor trustee of the trust, Douglas McConnell contended that Robert Stephenson had never placed the IRA, brokerage accounts, or life insurance policy into the trust, so they remained in his personal estate and the trust was empty. As executor of the will, appellant contended that each of these three assets had its own, nontestamentary distribution instruction, so they did not fall into the residuary estate. Appellees Eric Stephenson and Mark Stephenson contested these explanations, both factually and legally.

{¶ 5} The case was tried to the probate court. The court determined that the coin collection was not personal property as envisioned by the will and was

---

1. As plaintiff, Eric Stephenson named five defendants to the declaratory action: Helen Stephenson (appellant), Kimberly Spence, Mary Kay Stephenson, Douglas N. McConnell, and Mark E. Stephenson. Appellant answered by denying the allegations in the complaint. Kimberly Spence, Mary Kay Stephenson, and Douglas N. McConnell did not answer. Mark Stephenson answered by admitting the allegations in the complaint and filed a cross-claim against appellant similarly seeking declaratory judgment as to the assets. Appellant answered the cross-claim by denying the allegations.

therefore part of the residuary estate that passed to the trust under the terms of the will. The court determined that Robert Stephenson had indeed placed the Merrill Lynch IRA and Merrill Lynch brokerage accounts into the trust, so that they were trust assets properly disbursable by the trustee to the beneficiaries. However, the court determined that Robert Stephenson had not placed the GMAC life insurance policy into the trust, but that it was intended to pass under its own terms, as a nontestamentary asset—outside of probate and outside of the trust. Appellant Helen Stephenson has timely appealed, protesting the ruling as to the IRA and brokerage accounts and asserting two assignments of error.

## II

### Assignment of Error Number One

The trial court erred in finding the existence of a valid trust on behalf of Robert E. Stephenson, deceased, and that the same was funded by the Merrill Lynch brokerage accounts and the Merrill Lynch IRA account.

{¶ 6} Appellant asserts that the trial court erred in concluding that these assets were the property of the trust, arguing that (1) Robert Stephenson never transferred possession of these accounts to the trust, presumably via the trustee; (2) Robert Stephenson never transferred ownership to the trust, inasmuch as ownership was recorded with Merrill Lynch on the client account records; and (3) these accounts are themselves each a form of a trust with beneficiaries designated in their individual client agreements. We disagree.

{¶ 7} The interpretation of trusts is a question of law for the court. *In re Estate of Davis* (1996), 109 Ohio App.3d 181, 183, 671 N.E.2d 1302. This court reviews questions of law de novo. *Maumee v. Pub. Util. Comm.*, 101 Ohio St.3d 54, 2004-Ohio-7, 800 N.E.2d 1154, at ¶ 3.

{¶ 8} In finding that these accounts were the property of the trust, the probate court relied on this court's decision in *Hatch v. Lallo*, 9th Dist. No. 20642, 2002-Ohio-1376, 2002 WL 462862. In *Hatch*, one Laddie Lallo executed a revocable inter vivos trust, named himself as the trustee, and designated certain shares of stock as trust assets. Id. at ¶ 13. When Lallo died, the certificates for the stock were still registered in his own name, not in the name of the trust. Id. at ¶ 13–14. From this, Shawn Hatch contended that Lallo had not transferred possession or ownership of these assets from himself to the trust, so these assets were not in the trust (and therefore, the trust was unfunded and nonexistent). Id. at ¶ 2.

{¶ 9} The *Hatch* court held that because Lallo was both the settlor and the trustee, he was not required to transfer legal ownership from himself as an individual to himself as trustee or to reregister the stock under the trust's name.

Id. at ¶ 11. Mere declaration of his intent to place the assets in the trust was sufficient and effective. Id. The *Hatch* court explained its rationale:

The important question in this case is whether the decedent divested himself of the equitable interest in the property in question. If he made such a transfer of the equitable interest, the separation of equitable and legal interests that is required to support a trust is present and the decedent, as settlor-trustee, held legal title to the trust property subject to the trust.

Id. at ¶ 5. Based on this premise, the *Hatch* court identified four aspects that instructed its decision: the decedent unambiguously evidenced an intent to create the trust at the time it was executed, the decedent divested himself of an equitable interest in the asset, the decedent separated the asset from the balance of his personal property, and the beneficiary had access to the asset once it was in the trust. Id., 2002-Ohio-1376, at ¶ 18–19.

{¶ 10} We are also mindful of the dissent in *Hatch*, which explained that an inter vivos trust is invalid without a particular showing of effective delivery, under the same principles that govern an inter vivos gift. Id. at ¶ 29 (Batchelder, J., dissenting). The *Hatch* dissent cited three cases to support this position: *Worthington v. Redkey* (1912), 86 Ohio St. 128, 99 N.E. 211; *Cleveland Trust Co. v. White* (1937), 58 Ohio App. 339, 9 O.O. 239, 16 N.E.2d 588; and *Whitehead v. Bishop* (1925), 23 Ohio App. 315, 155 N.E. 565. Before proceeding with the present case, it is worth a moment to reconcile the majority and dissenting opinions in *Hatch*.

{¶ 11} Upon further inquiry into these two positions, the key distinction is whether the inter vivos trust in question is revocable or irrevocable. Of the cases cited by the *Hatch* dissent, *Whitehead* merely applied and relied on *Worthington*. See *Whitehead*, 23 Ohio App. at 318–319, 155 N.E. 565. *Worthington* was Ohio's landmark case on this issue, holding that an inter vivos trust is invalid unless it is clearly proven that the assets were properly delivered to the trust—as would be required for an inter vivos gift. *Worthington*, 86 Ohio St. 128, 99 N.E. 211, at syllabus.[2] However, at the time of *Worthington* (and *Whitehead* ), revocable

---

2. {¶ a} To quote the *Worthington* syllabus directly:

{¶ b} Where property is claimed as a gift by way of a trust which is not testamentary, it devolves upon the donees to prove an express and certain trust for their benefit, either assumed by the donor himself or imposed upon a third person, and *in the latter case* that the property or the legal title thereto passed beyond the dominion or control of the donor in his lifetime, to the donees or to the person designated as a trustee for them.

{¶ c} (Emphasis added.) *Worthington*, 86 Ohio St. 128, 99 N.E. 211, at syllabus. Thus, it is evident that *Worthington* draws a distinction between the settlor-as-trustee situation and the third-party-trustee situation and requires strict adherence to the proof of transfer only "in the latter case"—the transfer to the third-party trustee. This distinction was often overlooked in the ensuing cases, up until the time of *Hatch*.

trusts were an unknown concept, so these cases necessarily anticipated only irrevocable trusts—which are far more amenable to analysis under the common law of gift. See *Union Trust Co. v. Hawkins* (1929), 121 Ohio St. 159, 167–178, 167 N.E. 389 (announcing with some skepticism the "declaration of a new doctrine" of revocable trusts and summarizing the inception of this doctrine in several other states).

{¶ 12} In *Cleveland Trust Co. v. White,* the *Hatch* dissent's principal authority, the revocability of the trust was extremely limited because it required the consent of the third-party trustee. *Cleveland Trust,* 58 Ohio App. at 352, 9 O.O. 239, 16 N.E.2d 588. Moreover, the *Cleveland Trust* court expressly relied on this limitation to avoid *Union Trust* and *Worthington.* Id. at 353, 9 O.O. 239, 16 N.E.2d 588. *Cleveland Trust* explained:

> A voluntary trust in its essence is merely a gift. The general principles of law relating to gifts apply to voluntary trusts. A promise to make a gift is of no binding effect as it is without consideration. To make a gift *operative and enforcible* [sic] it must be accompanied by the delivery of the property given. Likewise, in voluntary trusts the property sought to be given away or disposed of through the instrumentality of a trustee must be accompanied by a delivery of the property sought to be disposed of.

(Emphasis added.) Id. at 345–46, 9 O.O. 239, 16 N.E.2d 588. In the context of *Cleveland Trust,* "operative and enforceable" may be read as "irrevocable." Therefore, while the gift approach of *Cleveland Trust* is well suited to irrevocable trusts, we find no authority to extend it to revocable trusts. As the present case involves a revocable trust, we are persuaded by the position of the *Hatch* majority and withhold further consideration of the *Hatch* dissent until we are presented with a case concerning an irrevocable trust.

{¶ 13} Appellant contends that *Hatch* is distinguishable from the present case. First, appellant explains that Lallo had physical possession of the stock certificates in *Hatch,* which he placed in a safe-deposit box; while Robert Stephenson never had actual physical possession of the accounts in the present case—they were held by Merrill Lynch. We find this distinction immaterial, particularly in cases involving intangible assets, such as those presented here, which are inherently incapable of actual physical possession. Also, appellant's reasoning is counterintuitive; logically, a settlor who maintains actual physical possession of an asset would most reasonably be deemed less likely to have divested himself of an equitable interest in that asset, not more likely as appellant suggests. Following this reasoning, *Hatch* is instructive in the present case, at least with regard to these circumstances.

{¶ 14} Next, appellant contends that Lallo made an unequivocal and unambiguous declaration of his intent to fund his trust with his stock; whereas Robert

Stephenson never declared such an unequivocal intent and, rather, expressed to his broker a contrary intent. However, the probate court determined that Robert Stephenson did, in fact, declare such intent by listing and adequately describing the Merrill Lynch accounts in Schedule A to his trust and stating unequivocally and unambiguously within the trust: "I hereby transfer the other property listed in Schedule A to the Trustee." Also, a principal problem with appellant's argument is that it is based solely on hearsay testimony of the broker as to what Robert Stephenson allegedly said, and that broker's testimony is available only from portions of a deposition of that broker that were not submitted to the probate court. Therefore, there is no proof of any contrary intent. Even if this hearsay testimony had been properly before the probate court, we recognize the sound principle that the trier of fact is best positioned to weigh the credibility of the witness and reach a conclusion based on the totality of the evidence. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. We do not find this evidence sufficient to support appellant's argument or to distinguish *Hatch* from the present case.

{¶ 15} Finally, appellant seems to argue that because an IRA account is itself a form of a trust, Robert Stephenson was precluded from placing it into his express trust and the provisions of the IRA agreement must control. As appellant explains it, Robert Stephenson never changed the beneficiary designation on his Merrill Lynch IRA account, so when he died, Merrill Lynch was contractually obligated to disburse the account to the designated beneficiary. That is true as far as it goes, but only so far as his first premise is true—if it were so that Robert Stephenson was legally forbidden to place an IRA into his express trust. Appellant has provided this court with no authority to support that proposition. Appellant does cite three cases in her brief, but none of them is applicable to the present issue. See, *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 612 N.E.2d 706, paragraphs one and two of the syllabus (holding that a court's duty when interpreting a trust is to effectuate the settlor's intent and upholding the validity of spendthrift trusts generally); *Bielat v. Bielat* (Sept. 30, 1998), 9th Dist. No. 18930, 1998 WL 667999, 4–5 (upholding the validity of IRA beneficiary designations, in general, under Ohio's Statute of Wills); and *In re Estate of Davis* (1992) 225 Ill.App.3d 998, 1007, 168 Ill.Dec. 40, 589 N.E.2d 154 (finding that an IRA is not an express trust under Illinois's Statute of Wills, unless it otherwise meets the formalities of an express trust).

{¶ 16} While Merrill Lynch would be contractually obligated to disburse the account to the designated beneficiary under the terms of the account agreement, such an agreement is not conclusive of ownership and would not prevent Robert Stephenson from transferring ownership of the IRA during his lifetime. As the

dissent explained in *Hatch,* the nature of these trusts is of "an equitable gift; therefore, general principles of law relating to gifts *inter vivos* apply." *Hatch,* 2002-Ohio-1376, at ¶ 29 (Batchelder, J., dissenting). Presumably, Robert Stephenson could make a gift of his IRA without the beneficiary designation stripping the recipient of ownership upon Robert Stephenson's death. Similarly, IRAs may be factored for Medicare purposes, seized by the government in criminal situations, and subject to equitable division in divorce proceedings. See Section 408 et seq., Title 26, U.S.Code. We find appellant's argument that Robert Stephenson could not place his IRA into his trust to be unpersuasive and unsupported and therefore without merit. Once ownership of the IRA was transferred to the trust, the beneficiary designation was no longer determinative of ownership—even upon Robert Stephenson's death.

{¶ 17} Under the authority of *Hatch,* this court concludes that Robert Stephenson unambiguously evidenced his intent to create the trust at the time it was executed, that he effectively divested himself of an equitable interest in the asset while transferring legal interest to himself as trustee, and that he separated the asset from the balance of his personal property. See *Hatch,* 2002-Ohio-1376, at ¶ 18–19. Therefore, we find that Robert Stephenson placed these assets in his trust, and therefore they are trust assets properly disbursable by the trustee to the beneficiaries.

{¶ 18} This court finds that appellant's first assignment of error lacks merit.

### Assignment of Error Number Two

The judgment of the trial court finding that a trust existed and it was and the corpus of the trust consisted of the Merrill Lynch brokerage account and the Merrill Lynch IRA account is against the manifest weight of the evidence.

[3] {¶ 19} Appellant argues that the trial court's finding was against the manifest weight of the evidence, specifically contending that Robert Stephenson could not have made an unequivocal and unambiguous declaration of his intent to create the trust because he allegedly made a statement of contrary intent to his stock broker. In her brief to this court, appellant explains, "The trial court apparently did not consider this testimony and if it did consider it[,] excluded it based upon the concept of hearsay." That much is evident. Thus, appellant's manifest-weight argument is actually a protest that the probate court improperly excluded the stockbroker's testimony. We disagree.

{¶ 20} A trial court's admission of evidence is reviewed for abuse of discretion. *State v. Ahmed,* 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, at ¶ 79, certiorari denied (2005), —— U.S. ——, 125 S.Ct. 1703, 161 L.Ed.2d 531. An abuse of discretion is more than an error of law or judgment, but, rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d

1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 21} Appellant contends that the entire transcript of the stockbroker's deposition was admitted to the probate court. A review of the record finds this to be untrue. However, even if it were true, appellant's argument is unavailing. Appellant contends that the stockbroker's admittedly hearsay testimony, as to what was said by Robert Stephenson, is admissible under a particular hearsay exception:

> Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *
>
> (5) Statement by a deceased or incompetent person. The statement was made by a decedent * * * where all of the following apply:
>
> (a) the * * * decedent's estate * * * is a party;
>
> (b) the statement was made before the death * * *;
>
> (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

Evid.R. 804(B)(5). While items (a) and (b) are certainly true (the estate is a party and the alleged statement was made by Robert Stephenson before he died), item (c) has not been satisfied. The statement was not offered to rebut testimony of an adverse party; it was offered to rebut the trust—a statement by Robert Stephenson himself declaring his intent to create the trust and fund it with the Merrill Lynch accounts. We cannot conclude that the probate court abused its discretion in excluding this hearsay testimony.

{¶ 22} Reversal on manifest-weight grounds is reserved for the exceptional case in which the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [decision] must be reversed." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009; accord *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Based on our finding under the first assignment of error, this court agrees with the conclusion of the probate court, and therefore we do not find that the probate court lost its way or created a manifest miscarriage of justice. Appellant's second assignment of error is without merit.

### III

{¶ 23} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BATCHELDER and READER, JJ., concur.