DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Robert Zangrando appeals from the Summit County Court of Common Pleas, which entered judgment on a jury verdict in favor of appellee Nicole Kuder. We affirm.
 I. {¶ 2} Mr. Zangrando and Ms. Kuder were neighbors in a condominium complex, living in adjacent units with a shared porch area. Ms. Kuder smoked cigarettes on the porch and the smoke entered Mr. Zangrando's unit through a nearby window. Mr. Zangrando disapproved and protested to Ms. Kuder, the condominium board, and the local municipal government. He received no satisfaction. The board's attorney actually told Mr. Zangrando to stop harassing Ms. Kuder. Relations between the neighbors deteriorated to shouting, profanity, and threats of hostility.
 {¶ 3} Mr. Zangrando filed a lawsuit, seeking an injunction and $300,000 in damages. Eventually, Ms. Kuder moved out, but the case proceeded to a jury trial. After six days of trial, the court directed verdict in favor of Ms. Kuder on Mr. Zangrando's claim of intentional infliction of emotional distress. The jury returned a unanimous defense verdict on all other counts, finding that Ms. Kuder was not liable and refusing to award Mr. Zangrando anything. Mr. Zangrando filed post-trial motions (JNOV and new trial), which the trial court denied. Mr. Zangrando timely appealed, asserting eight assignments of error for review. Certain assignments of error have been consolidated to facilitate review.
 II. A. First Assignment of Error
"THE JURY VERDICT AGAINST THE PLAINTIFFA-PPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Fifth Assignment of Error
"THE JURY'S PREJUDICE AGAINST THE PLAINTIFFA-PPELLANT IMPROPERLY AFFECTED THE VERDICT."
 Sixth Assignment of Error
"THE LOWER COURT'S DENIAL OF PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL AND JUDGMENT NOT WITHSTANDING THE VERDICT WAS CONTRARY TO LAW AND AN ABUSE OF DISCRETION."
 {¶ 4} Mr. Zangrando challenges the manifest weight of the evidence. Mr. Zangrando insists that he produced credible evidence as to each of the elements for each of his claims, and then relies on this argument to attribute the jury's defense verdict to some unknown prejudice. Mr. Zangrando further alleges that the trial court erred in refusing his motions for either judgment not withstanding the verdict (JNOV) or a new trial, and his sole rationale is that: "As fully discussed in Assignment of Error No. 1, Appellant Zangrando proved all of the elements of [his claims]." From this, Mr. Zangrando concludes that the jury's verdict was a miscarriage of justice that warranted JNOV or a new trial. We disagree.
 {¶ 5} Reversal on manifest weight grounds is reserved for the exceptional case in which the evidence proves that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed." (Edits omitted.)Stephenson v. Stephenson, 163 Ohio App.3d 109, 2005-Ohio-4358, ¶ 22. A finding is not against the manifest weight of the evidence merely because the jury believed or disbelieved one side's evidence as opposed to the other side's evidence.Gugliotta v. Morano, 161 Ohio App.3d 152, 2005-Ohio-2570, ¶ 44.
 {¶ 6} Over the course of the six-day trial, Mr. Zangrando called 12 witnesses and produced dozens of exhibits. That is, Mr. Zangrando had his day in court. Eight impartial jurors attended the entire trial, observed the presentation of his case, deliberated over the evidence, and came to the unanimous conclusion that Mr. Zangrando had failed to prove his case by a preponderance of the evidence. We have reviewed the entire record and find this to be a reasonable outcome. We do not find that the jury "clearly lost its way" or "created such a manifest miscarriage of justice that the decision must be reversed." SeeStephenson at ¶ 22. These assignments of error are overruled.
 B. Second Assignment of Error
"THE LOWER COURT ERRED BY FAILING TO INSTRUCT THE JURY ON PLAINTIFF-APPELLANT'S QUALIFIED NUISANCE CLAIM."
 Third Assignment of Error
"THE LOWER COURT ERRED BY FAILING TO INSTRUCT THE JURY ON PLAINTIFF-APPELLANT'S BREACH OF CONTRACT CLAIM."
 Seventh Assignment of Error
"THE LOWER COURT ERRED BY FAILING TO PROVIDE SEPARATE JURY INSTRUCTION FOR PLAINTIFF-APPELLANT'S CLAIMS OF ASSAULT AND BATTERY."
 {¶ 7} Mr. Zangrando alleges that the trial court erred in failing to instruct the jury on a qualified nuisance cause of action, a breach of contract cause of action, or assault and battery as independent actions. Mr. Zangrando charges that these errors necessitate a new trial. We disagree.
 {¶ 8} The decision as to whether the evidence presented at trial is sufficient to require a particular jury instruction is reviewed for an abuse of discretion. State v. Wolons (1989),44 Ohio St.3d 64, paragraph two of the syllabus. Abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court.Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 9} Regarding the qualified nuisance instruction, Mr. Zangrando alleges that he pled and proved qualified nuisance as a cause of action, and that it was improper for the trial court to refuse to instruct the jury according to his request. Qualified nuisance is based in negligence, whereas its counterpart, absolute nuisance, results from culpable or intentional conduct. Metzger v. Pennsylvania, Ohio DetroitR.R. (1946), 146 Ohio St. 406, paragraphs one and two of the syllabus. From an entirely different perspective, private nuisance is based on harm to the plaintiff personally, whereas its counterpart, public nuisance, is based on harm to the public in general. Haas v. Sunset Ramblers Motorcycle Club, Inc.,132 Ohio App.3d 875, 878-79, 1999-Ohio-764. The outfall of all of this is the recognition that the terms "qualified nuisance" and "private nuisance" are not synonymous.[1] See Black's Law Dictionary (8th Ed. 2004) — nuisance.
 {¶ 10} In the present case, the trial court instructed the jury on a private nuisance cause of action, stating:
"Now, the third claim. That's private nuisance. The plaintiff claims that the defendant created a nuisance and the nuisance caused damage to the plaintiff."
The trial court went on to instruct the jury on ordinary intentional nuisance, or what has been labeled absolutenuisance, stating:
"Now, before you find for the plaintiff, you must find by a preponderance of the evidence that the defendant intentionally and unreasonably caused tobacco smoke to enter [plaintiff Zangrando's residence], which created annoyance and to endanger the comfort and health of the plaintiff."
Mr. Zangrando protested this instruction at trial, alleging that he had pled and proven a qualified nuisance cause of action. The trial court overruled this protest, explaining that qualified nuisance was not pled in the complaint.
 {¶ 11} Mr. Zangrando's attorney insisted emphatically to the trial court, and has repeatedly insisted in post-trial motions and on appeal, that qualified nuisance was pled in the complaint. In fact, Mr. Zangrando's complaint states: "Plaintiff further states that the actions of the Defendant is a private
nuisance." [sic] (Emphasis added.) It appears that Mr. Zangrando has simply failed to appreciate the difference between private and qualified nuisance. See Black's Law Dictionary, supra. In any event, it is evident that Mr. Zangrando did not plead qualified nuisance in his complaint. Accordingly, the trial court did not err in so finding.
 {¶ 12} Notwithstanding the actual cause of action pled in the complaint, Mr. Zangrando also argues that he presented sufficient evidence at trial to warrant an instruction on this cause of action. It is up to the trial court to decide whether the evidence presented at trial was sufficient to require a particular jury instruction. See Wolons, 44 Ohio St.3d at 64. As this is a matter within the trial court's discretion, this Court will defer to the trial court's decision unless we find that it abused its discretion. Pons, 66 Ohio St.3d at 621. Thus, Mr. Zangrando alleges that the trial court's implicit finding that the evidence did not support the requested instruction exhibits an attitude that was unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219. This Court finds nothing to support such an accusation.
 {¶ 13} Mr. Zangrando raised this same perceived error to the trial court in his post trial motion. In denying that motion, the trial court explained:
"Although [Mr. Zangrando] and his attorney have reason to be unhappy with the jury's decision, it was not an unreasonable result. Considering all the evidence, this Court cannot find that any of the grounds for a [JNOV or New Trial] cited by [Mr. Zangrando] should be sustained.
"It appears that [Mr. Zangrando] seeks to have this Court weigh the evidence and the credibility of the witnesses. After a careful review of the file, including the briefs of the attorneys, as well as the notes taken by this Court, and after searching my memory of the same, this Court cannot conclude that any of the grounds under Civ.R. 59(A) would apply, nor would sound discretion or good cause give reason for granting a new trial."
Thus, the trial court was given the opportunity to reconsider its decision and expressly stated that it had reviewed its notes, searched its memory, and sought a conclusion based in sound discretion and good cause. This Court finds nothing in this approach that would be unreasonable, arbitrary, or unconscionable. See Blakemore, 5 Ohio St.3d at 219. Accordingly, this Court does not conclude that the trial court abused its discretion.
 {¶ 14} Regarding the breach of contract claim, Mr. Zangrando based this claim on Ms. Kuder's alleged breach of the condominium rules. Specifically, Mr. Zangrando asserted in his brief to this Court, that:
"the Appellant Zangrando asserted [in his complaint] that the `action of Appellee Kuder is malicious, willful, reckless, and unreasonable and thereby interfering with the Appellant Zangrando's quiet use and enjoyment of the Appellant Zangrando's property in direct breach of the condo association agreement.' The jury was not provided with an instruction on this claim." (Emphasis added.)
Mr. Zangrando's complaint contained six causes of action, and only the cause of action quoted above contained any reference to a breach of condominium rules, which is also the only suggestion of any breach of contract.
 {¶ 15} In its instructions to the jury, the trial court expressly addressed a violation of condominium rules as an independent cause of action, stating:
"Now, the fourth claim is the violation of the condominium instruments.
"Now, in this claim, the plaintiff claims that the defendant was subject to [the condominium community's] rules and she breached those rules, causing the plaintiff damage.
"Now, a unit owner or person entitled to occupy a unit of a condominium is liable for damages to any person for failure to comply with any lawful provision of the condominium instruments.
"Now, the condominiums known as [plaintiff's and defendant's addresses] are part of [this community complex].
"Plaintiff's Exhibits 9 and 10 are the [condominium community's] Declaration of Condominium Ownership and Handbook of Rules and Information. That's the title.
"Plaintiff claims that defendant violated the above provisions and, in particular, the Declaration of Condominium Ownership Article 11, Section 8, which says as follows: Nuisance. No nuisance shall be allowed upon the condominium property nor any use or practice which interferes with the peaceful possession and proper use of the property by its residents.
"Now, in determining whether a nuisance exists, you may consider the factors set forth on Pages 8 and 9 in the third claim.
"An agreement is breached or broken when a person fails to comply with her duties under the agreement."
Based on the above instruction, quoted directly from the trial transcript, this Court finds that the trial court did instruct the jury on the alleged breach of the condominium rules. This Court does not find the court's attitude to be unreasonable, arbitrary or unconscionable. See Blakemore,5 Ohio St.3d at 219. Accordingly, we cannot conclude that the trial court abused its discretion. See id.
 {¶ 16} Regarding the separation of assault and battery as independent actions, Mr. Zangrando argues that it is impossible to instruct the jury on these separate causes of action as a single claim because they have distinct elements. Ohio's model jury instructions on assault and battery state:
"CIVIL ASSAULT. An assault is the intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact." 2 Ohio Jury Instructions (2003), Section 219.01(1), at 17.
"BATTERY. Battery is intentional, unconsented, contact with another." 2 Ohio Jury Instructions (2003), Section 219.02(1), at 18.
In the present case, the trial court instructed the jury as follows:
"Now, the first claim. First claim is a civil assault and battery. The plaintiff claims that defendant has committed an assault and battery on him, causing damage to the plaintiff.
"An assault is the intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact.
"Battery is intentional, unconsented contact with another."
Therefore, upon initial review, we find that the trial court defined assault and battery individually, articulated each of their elements independently, and replicated the Ohio model jury instructions.
 {¶ 17} Mr. Zangrando argues that it is impossible to instruct the jury on these causes of action as a single claim and insists that it was a clear abuse of discretion and reversible error for the trial court to do so. Notably, Mr. Zangrando cites no law to support this particular argument. Instead, Mr. Zangrando insists that assault and battery were pled and proven independently, and therefore, the jury should have been instructed on them independently.
 {¶ 18} The trial court stated explicitly that Mr. Zangrando had pled them as a single cause of action in his complaint. Reviewing the complaint, the first cause of action states: "The Plaintiff states that the actions of the Defendant constitutes an assault and battery on Plaintiff." [sic] No other causes of action within the complaint refer to either assault or battery. Therefore, this Court does not find that the trial court's attitude was unreasonably, arbitrary, or unconscionable in finding that Mr. Zangrando had pled assault and battery as a single cause of action. Blakemore, 5 Ohio St.3d at 219.
 {¶ 19} Notwithstanding the actual pleadings, Mr. Zangrando also argues that he presented sufficient evidence at trial to warrant an independent instruction on assault and battery causes of action, and urges this Court to find that the trial court abused its discretion in refusing to do so. See Wolons,44 Ohio St.3d at 64. Otherwise stated, Mr. Zangrando urges this Court to find that the trial court's refusal to use his particular jury instruction, rather than the Ohio model jury instruction, exhibits an attitude that was unreasonable, arbitrary, or unconscionable. See Blakemore, 5 Ohio St.3d at 219. As with his qualified nuisance argument above, Mr. Zangrando raised this perceived error to the trial court in his post trial motion. In denying that motion, the trial court explained that it had reviewed its notes, searched its memory, and sought a conclusion based in sound discretion and good cause. This Court finds nothing in this approach that would be unreasonable, arbitrary, or unconscionable. See id. Accordingly, this Court does not conclude that the trial court abused its discretion. These three assignments of error are overruled.
 C. Fourth Assignment of Error
"THE LOWER COURT IMPROPERLY ADMITTED DEFENDANT-APPELLEE'S EXHIBITS INTO EVIDENCE."
 {¶ 20} Mr. Zangrando alleges that the trial court erred by admitting Ms. Kuder's exhibits at trial, his reason being that Ms. Kuder did not provide these exhibits to him prior to trial. Mr. Zangrando argues that this constitutes unfair surprise and trial by ambush, which warrants a new trial. We disagree.
 {¶ 21} A trial court's admission of evidence is reviewed for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190, at ¶ 79. An abuse of discretion is more than an error of law or judgment, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable, from which we may not merely substitute our judgment for that of the trial court.
 {¶ 22} The trial court admitted 62 defense exhibits proffered by Ms. Kuder; 55 of these were letters written by Mr. Zangrando. The other seven were obtained from Mr. Zangrando during discovery. Mr. Zangrando's claim that this is unfair surprise or trial by ambush lacks merit. Moreover, Ms. Kuder, in her trial brief, had identified her intent to use these exhibits, specifying among other things: "All correspondence produced in discovery;" and "Medical records of Robert Zangrando, or portions therefrom." Mr. Zangrando protests that Ms. Kuder did not exchange exhibits with him prior to trial, but that was not the court's instruction. The court instructed the parties toidentify to each other the exhibits they intended to use at trial. Ms. Kuder did so. It would be absurd to reverse the jury verdict on the basis that Ms. Kuder failed to provide Mr. Zangrando with letters written by Mr. Zangrando. This assignment of error is overruled.
 D. Eighth Assignment of Error
"THE LOWER COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT GRANTED A DIRECTED VERDICT IN FAVOR OF DEFENDANT-APPELLEE ON THE PLAINTIFF-APPELLANT'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."
 {¶ 23} Mr. Zangrando alleges that the trial court erred in granting Ms. Kuder a directed verdict on Mr. Zangrando's claim of intentional infliction of emotional distress. Mr. Zangrando argues that he produced evidence on each of the elements of this claim, and it should have been submitted to the jury. We disagree.
 {¶ 24} The decision to grant or deny a Civ.R. 50(A) motion for directed verdict is reviewed de novo. Goodyear Tire RubberCo. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 4. Directed verdict is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non-moving party, reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 50(A)(4) (B); Goodyear at ¶ 3. Failure to support one or more elements of a claim with probative evidence is a sufficient basis for directing a verdict. See Pierce v.Trimble (1995), 101 Ohio App.3d 690, 695.
 {¶ 25} The trial court concluded that Mr. Zangrando failed to produce evidence on each element of this claim, and upon review, we agree. For example, "a plaintiff in a case for intentional infliction of emotional distress must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions."Buckman-Peirson v. Brannon, 159 Ohio App.3d 12, 2004-Ohio-6074, at ¶ 56. Mr. Zangrando offered no expert testimony or other "guarantee of genuineness," id., that would substantiate his self-serving testimony. This is a failure as a matter of law. Upon review of the record, in light of the prevailing law, we find that the trial court properly directed a verdict on this claim. See id. at ¶ 57. This assignment of error is overruled.
 III. {¶ 26} Mr. Zangrando's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Moore, J. concurs.
 Carr, P.J. concurs in judgment only.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] According to Black's Law Dictionary (8 Ed. 2004), under "nuisance":
"nuisance. 1. A condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property; esp., a nontransitory condition or persistent activity that either injures the physical condition of adjacent land or interferes with its use or with the enjoyment of easements on the land or of public highways. * * * 2. Loosely, an act or failure to act resulting in an interference with the use or enjoyment of property. • In this sense, the term denotes the action causing the interference, rather than the resulting condition the Slocums' playing electric guitars in their yard constituted a nuisance to their neighbors. * * * 3. The class of torts arising from such conditions, acts, or failures to act when they occur unreasonably. — Also termed actionable nuisance. * * *"
"absolute nuisance. 1. Interference with a property right that a court considers fixed or invariable, such as a riparian owner's right to use a stream in its natural condition. 2. See nuisance per se. 3. Interference in a place where it does not reasonably belong, even if the interfering party is careful. 4. Interference for which a defendant is held strictly liable for resulting harm, esp. in the nature of pollution. Cf. qualified nuisance. * * *"
"qualified nuisance. A condition that, though lawful in itself, is so negligently permitted to exist that it creates an unreasonable risk of harm and, in due course, actually results in injury to another. • It involves neither an intentional act nor a hazardous activity. — Also termed nuisance dependent on negligence. Cf. absolute nuisance."
"public nuisance. An unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property. • Such a nuisance may lead to a civil injunction or criminal prosecution. — Also termed common nuisance."
"private nuisance. A condition that interferes with a person's enjoyment of property; esp., a structure or other condition erected or put on nearby land, creating or continuing an invasion of the actor's land and amounting to a trespass to it. • The condition constitutes a tort for which the adversely affected person may recover damages or obtain an injunction."