CITY OF MAUMEE ET AL., APPELLANTS, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Maumee v. Pub. Util. Comm.,*
101 Ohio St.3d 54, 2004-Ohio-7.]

(No. 2002–0052—Submitted September 17, 2003—Decided January 14, 2004.)

MOYER, C.J.

Background

{¶ 1} This is an appeal as of right by the cities of Maumee, Oregon, and Toledo, Ohio, from orders of appellee Public Utilities Commission of Ohio adopting rules for governmental aggregation service pursuant to R.C. Chapter 4928.[1] The appellants participated in the rulemaking proceedings, as did FirstEnergy Corporation and Ohio Consumers' Counsel, which both intervened in this appeal as appellees.

{¶ 2} The legal backdrop for this appeal is 1999 Am.Sub.S.B. No. 3, 148 Ohio Laws, Part IV, 7962 ("S.B. 3"), which provides for competition in the supply of electric generation services, commencing January 1, 2001. One of the provisions of S.B. 3, R.C. 4928.20, authorizes municipalities, townships, and counties to create governmental aggregation programs that allow communities to combine their residents into buying pools and then contract for a supply of energy to the pools. According to R.C. 4928.20(F), "[a] governmental aggregator shall be subject to supervision and regulation by the public utilities commission only to

---

1. The commission's rulemaking case was styled "*In the Matter of the Commission's Promulgation of Rules for Competitive and Noncompetitive Retail Electric Service Standards Regarding Governmental Aggregation Pursuant to Chapter 4928, Revised Code,*" Case No. 00–2394–EL–ORD.

the extent of any competitive retail electric service it provides and commission authority under this chapter."

{¶ 3} On December 21, 2000, the commission issued an order in the rulemaking proceedings inviting interested parties to file comments on a set of proposed rules regulating governmental aggregation. After consideration of the comments, on August 9, 2001, the commission issued its findings and order and adopted three rules related to governmental aggregation.[2] In their application for rehearing, appellants asserted that the commission had committed four errors. Appellants asserted the same errors in their notice of appeal to this court. In its entry on rehearing on November 15, 2001, the commission denied appellants' application for rehearing as to all four asserted errors. We now consider these issues de novo, because they involve matters of law rather than matters of fact and evidence. We reject all claimed errors and affirm the commission.

### First Claimed Error

{¶ 4} First, appellants claim that the commission erred by adopting rules for electric governmental aggregation service that conflict with R.C. Chapter 4929 and conflict with rules proposed for natural gas governmental aggregation in another rulemaking proceeding.

{¶ 5} The rules the commission adopted for electric governmental aggregation service do differ from the rules the commission proposed for natural gas governmental aggregation service. Likewise, it is undisputed that the rules that are the subject of this appeal conflict with R.C. Chapter 4929. However, the fact that these conflicts exist does not show that the commission erred in adopting the rules questioned in this appeal.

{¶ 6} The governmental aggregation rules were adopted under authority of R.C. 4928.06(A) to implement R.C. Chapter 4928, which defines the regulatory scheme for the electric industry. R.C. Chapter 4929 defines the regulatory scheme for the natural gas industry and has no relevance to appellants' appeal. There are numerous differences between the electric industry and gas industry, such as historic development, delivery facilities, ownership, and federal regulation. Hence, the General Assembly could reasonably adopt statutory schemes that differ from each other as to regulation of the two industries. Likewise, it is reasonable that the regulatory rules developed under the two statutory schemes would differ from each other. We conclude that the differences are purposeful.

---

2.  Ohio Adm.Code 4901:1–10–32, cooperation (by electric distribution companies) with certified governmental aggregators; Ohio Adm.Code 4901:1–21–16, formation and operation of an opt-out governmental aggregation; and Ohio Adm.Code 4901:1–21–17, opt-out disclosure requirements.

{¶ 7} The commission did not act without authority when it adopted rules regulating the electric industry that differed from rules regulating the natural gas industry.

Second Claimed Error

{¶ 8} Second, appellants assert that the commission erred by adopting rules for governmental aggregation service that they claim illegally regulate "municipal home rule aggregators." This claimed error assumes the existence of the concept of a "municipal home rule aggregator." It also implicates, generally, the Home Rule Amendments, Article XVIII of the Ohio Constitution,[3] and, specifically, Section 4, Article XVIII: "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

{¶ 9} Appellants argue that they render aggregation services and, because they are municipalities, they are exempt from regulation by the commission by virtue of Section 4, Article XVIII, of the Ohio Constitution. Appellants' argument, however, ignores the fact that in order for Section 4, Article XVIII to be applied to them, the service or product to be obtained by the resident pools they aggregate must be a service or product supplied by a public utility.

{¶ 10} We defined "public utility" in our decision in *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees* (1992), 64 Ohio St.3d 385, 596 N.E.2d 423. A public utility is an enterprise with the following characteristics and functions: (1) it provides essential goods or services that the general public has a right to demand from the utility, (2) it conducts its operation in such a manner as to be a matter of public concern, and (3) it occupies a monopolistic or oligopolistic position in the marketplace (by definition, a noncompetitive position). Governmental aggregation services are not provided by entities possessed of the foregoing characteristics. Therefore, the Home Rule Amendments do not apply to the appellants with respect to their providing governmental aggregation services.

{¶ 11} From the date of enactment of the Home Rule Amendments in 1912 until the starting date of competitive retail electric service under S.B. 3, most

---

3. The Home Rule Amendments were adopted by the 1912 constitutional convention. They conferred a substantial degree of municipal independence in utility and other matters.

Ohioans received bundled, noncompetitive electric service from public utilities regulated by the commission. Other Ohioans received bundled, noncompetitive service provided by municipal electric systems operated pursuant to the Home Rule Amendments. These municipal systems are within the definition of "public utilities," although they are not subject to commission regulation. Typically, municipalities purchase all or a portion of the power generation needed to serve their residents in the wholesale market and deliver it through the municipally owned distribution system.

{¶ 12} Another type of municipal arrangement for delivery of electric service to the residents of the municipality that exempts the municipality from commission regulation under the Home Rule Amendments is the contracting by the municipality with the local public utility electric company to deliver electricity through lines owned by that utility to the residents of the municipality at prices and upon terms and conditions agreed to by the municipality and the utility. These contracts are approved by or incorporated in municipal ordinances that set forth the rates for the public utilities services to be provided. Thus, the rates charged are often referred to as ordinance rates.

{¶ 13} If either of the foregoing municipal electric service arrangements, or some variation of them, could be considered the performance by the municipality of an aggregation service, the municipality would indeed be a municipal home rule aggregator protected from regulation by the Home Rule Amendment. However, these types of municipal arrangements under the Constitution of Ohio are not the subject of this appeal. Rather, the subject of this appeal is grounded in Ohio statutory law enacted as part of S.B. 3.

{¶ 14} R.C. Chapter 4928, which deals with competitive retail electric service, was enacted as part of S.B. 3. It is a statutory regime that provides a variety of means for consumers to meet their electricity needs, including the creation of entirely new classes of third-party entities in electricity markets, such as brokers, marketers, and aggregators, both governmental and others. R.C. 4928.02 and 4928.03. Prior to the enactment of S.B. 3, the so-called Certified Territories Act (R.C. 4933.81 through 4933.90) barred such entities from operating in Ohio. Electric service customers were required to purchase both electricity and distribution services only from their host electric utility operating within its certified territory unless they purchased electricity from a municipal utility.

{¶ 15} However, S.B. 3 not only created R.C. Chapter 4928, it also amended a number of preexisting statutes affecting the electric industry. One of these statutes was R.C. 4933.81, the definitions section of the Certified Territories Act. The amendment eliminated the certified-territory monopoly for the production of electricity, while retaining it for distribution service, by excluding "competitive retail electric service" from the definition of "electric service," R.C. 4933.81(F),

for which a monopoly was granted by R.C. 4933.84. 148 Ohio Laws, Part IV, 8057–8058. The amendment of R.C. 4933.81 authorized competition by the new third-party entities contemplated by R.C. Chapter 4928, which otherwise would have been forbidden by R.C. 4933.84. One such entity is a "governmental aggregator," as defined in R.C. 4928.01(A)(13): " 'Governmental aggregator' means a legislative authority of a municipal corporation * * * acting as an aggregator for the provision of a competitive retail electric service under authority conferred under section 4928.20 of the Revised Code."

{¶ 16} R.C. 4928.20(A) provides: "The legislative authority of a municipal corporation may adopt an ordinance * * * under which * * * it may aggregate in accordance with this section the retail electrical loads located * * * within the municipal corporation * * * and, for that purpose, may enter into service agreements to facilitate for those loads the sale and purchase of electricity."

{¶ 17} Governmental aggregation applies only to retail electric loads; it does not apply to the wholesale purchase and resale of electricity. R.C. 4928.01(A)(13) and 4928.20. Moreover, R.C. 4928.20(G) specifically exempts from the application of R.C. Chapter 4928 a governmental aggregator that is a municipality engaged in typical home rule activities whereby it aggregates residents in a service area and arranges for delivery of electricity to them through facilities that are municipally owned or operated: "This section does not apply in the case of a municipal corporation that supplies such aggregated service to electric load centers to which its municipal electric utility also supplies a noncompetitive retail electric service through transmission or distribution facilities the utility singly or jointly owns or operates."

{¶ 18} Therefore, the rules adopted by the commission regulating governmental aggregation service have no application to municipal home rule aggregators and do not illegally regulate them as appellants claim in their second asserted error. The commission did not err in adopting rules to regulate governmental aggregation service vis-à-vis the Home Rule Amendments.

## Third Claimed Error

{¶ 19} Third, appellants claim that the commission erred in determining that a governmental aggregator will necessarily provide a competitive retail electrical service. In support of that claim, appellants again resort to contrasting the statutory provisions in R.C. Chapter 4929, which regulate the natural gas industry, with the statutory provisions of R.C. Chapter 4928, which regulate the electric industry. Implicit in this argument is the suggestion that the law adopted by the General Assembly in R.C. Chapter 4929 is clear and the law adopted in R.C. Chapter 4928 is ambiguous. In rejecting that argument, we conclude that the provisions of R.C. Chapter 4928 relevant to this appeal are

unambiguous and are in no need of clarification by reference to R.C. Chapter 4929.

{¶ 20} The commission did not err by determining that a governmental aggregator will necessarily provide a competitive retail service. It would have been error to determine otherwise. Under R.C. 4928.01(A)(13), a governmental aggregator is an entity that by definition provides "a competitive retail electric service under authority conferred under section 4928.20 of the Revised Code." R.C. 4928.01(A)(4) provides: " 'Competitive retail electric service' means a component of retail electric service that is competitive as provided under division (B) of this section." R.C. 4928.01(B) provides: "For the purposes of this chapter, a retail electric service component shall be deemed a competitive retail electric service if the service component is competitive pursuant to a declaration by a provision of the Revised Code or pursuant to an order of the public utilities commission authorized under division (A) of section 4928.04 of the Revised Code. Otherwise, the service component shall be deemed a noncompetitive retail electric service." R.C. 4928.03 in turn declares aggregation to be a competitive retail electric service.

{¶ 21} We overrule appellants' third proposition of law.

### Fourth Claimed Error

{¶ 22} Fourth, appellants claim that the commission erred when it permitted imposition of a switching fee on members of a governmental aggregation pool, which appellants complain is discriminatory. Neither the commission's decisions nor the rules it adopted in the matter on appeal established or altered the switching fees about which appellants complain. Rather, the fees were established in a stipulation, and they were implemented in a tariff, both of which were approved by the commission in a case entirely different from the commission case on appeal. The issue of whether switching fees are discriminatory simply is not a proper subject of appellants' appeal in this case. Therefore, we reject appellants' fourth claimed error.

### Conclusion

{¶ 23} We overrule appellants' four propositions of law and affirm the order of the commission.

Order affirmed.

RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Marsh & McAdams and Sheilah McAdams, for appellant city of Maumee.

Kerry Bruce and Leslie A. Kovacik, for appellant city of Toledo.

Goldberg, Wurster & Hayes, Paul Goldberg and Phillip D. Wurster, for appellant city of Oregon.

Jim Petro, Attorney General, Duane W. Luckey and Thomas W. McNamee, Assistant Attorneys General, for appellee state of Ohio.

James W. Burk, for intervening appellee FirstEnergy Corp.

Eric Stephens, Interim Consumers' Counsel, Dirken D. Winkler and John R. Smart, Assistant Consumers' Counsel, for intervening appellee Ohio Consumers' Counsel.