[Cite as *Guenther v. Sheffield Lake Zoning Bd. of Appeals*, 2015-Ohio-4521.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

KARL GUENTHER, et al.

    Appellants

    v.

SHEFFIELD LAKE ZONING BOARD OF
APPEALS

    Appellee

C.A. No.     14CA010577

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     13CV180627

DECISION AND JOURNAL ENTRY

Dated: November 2, 2015

MOORE, Judge.

{¶1} The following residents of Sheffield Lake: Karl Guenther, Maryellen Guenther, Edward Rinderknecht, Melvin Doick, Elie Moussa, and Werner Wittman (collectively "the Residents") appeal from the decision of the trial court, affirming the decision of the Sheffield Lake Board of Zoning and Building Appeals ("the Board").[1] We affirm.

I.

{¶2} Dearborn Land Investment, LLC ("Dearborn") possesses an option to purchase real property commercially zoned with a "B-2" designation in Sheffield Lake. Dearborn intended to construct a Dollar General retail store on the property, which the parties appear to

---

[1] Although Mr. Rinderknecht's surname is spelled "Rinderknect" in the lower court filings by the Residents' counsel, we note that the minutes of the Board, of which Mr. Rinderknecht had been a member, spell his name as "Rinderknecht." This Court will utilize the spelling provided in the Board's minutes. Mr. Wittman's full name is spelled "Warner Whitman" in the transcript of a Board hearing; however, the parties' filings and the Board minutes spell his name "Werner Wittman." This Court will utilize the latter spelling.

agree is a permitted use on a B-2 zoned property. In November of 2011, Dearborn submitted an application to the Board to review the size and location of the proposed store building for purposes of complying with a former version of the City of Sheffield Lake Ordinance ("Loc.Ord.") 1139.06(c), pursuant to a notice from the Chief Building Official that Board approval was required pursuant to this ordinance. At the time that Dearborn sought approval of its site plan, Loc.Ord. 1139.06(c) required that, "[o]n a corner lot, which borders a residential district the application for a permit to build on the lot shall be submitted to the Board of Zoning and Building Appeals for its approval of the size and location of the proposed building."[2]

{¶3} On November 16, 2011, the Board held a meeting, where Dearborn argued that Loc.Ord. 1139.06(c) applied only to properties zoned B-1, and that Board approval was not necessary for a permit for the property at issue, zoned B-2. However, Dearborn maintained that, even if the Board approval were necessary, it met the size and location requirements of the local ordinances. A representative of Dearborn, John Wojtila, explained how the proposed building met the setback requirements contained in the local ordinances. Thereafter, the public was permitted to comment, and Appellant Rinderknecht gave an oral and written presentation, purportedly on behalf of most of the Residents named herein[3], as well as others, detailing seven areas of concern pertaining to the construction of a Dollar General, none of which appear to pertain to size or location of the building. Appellant Moussa spoke regarding his concerns pertaining to traffic and his opinion that an increased risk of crime would occur if the application

---

[2]Loc.Ord. 1139.06(c) was amended effective July 23, 2013, and no longer contains this provision requiring Board approval of the size and location of the building in these circumstances.

[3] All of the Resident-Appellants with the exception of Melvin Doick, are listed on the written presentation that expresses the concerns raised by Appellant Rinderknecht.

were approved. The Board then voted to "table" discussion of the issue until its February meeting.

{¶4} At a meeting on January 18, 2012, the Chairperson of the Board indicated that Mr. Rinderknecht had become a Board member. Because Mr. Rinderknecht had spoken at length on the Dearborn issue, the Chairperson opined that he would have a conflict voting or participating in this matter. The remainder of the Board then voted to "untable" the matter. A board member then provided an explanation as to why the matter had been tabled at the last meeting. The board member explained that certain areas affecting the Dearborn issue needed further research. The board member indicated that the spirit of the provision in former Loc.Ord. 1139.06(c) requiring size and location approval from the Board, was to provide affected homeowners with protection from undue hardship. The board member also indicated that that there needed to be confirmation that the parcel was still commercially zoned. Further, the board member expressed a belief that Loc.Ord. 1115.06 (pertaining to variances) may provide protection to adjacent property owners that may be negatively affected by the commercial development. Information was then provided to the Board that the parcel had been commercially zoned since 1969, and continued to be commercially zoned. The matter was again tabled until the February board meeting.

{¶5} At the February board meeting, the Chairperson indicated that she believed the Board could interpret "this code," which from context of the Board minutes appears to be a reference to Loc.Ord. 1139.06(c), to deny the application even if Dearborn otherwise met the size and location provisions contained in the local ordinances. The Board voted to deny

Dearborn's application, with Appellant Rinderknecht abstaining from voting. Dearborn filed an administrative appeal from this denial with the trial court.[4]

{¶6} Thereafter, the Chief Building Inspector sent a letter to Dearborn entitled "Plan Denial Notice[.]" Dearborn appealed the denial to the Board, challenging the applicability of Loc.Ord. 1139.06(c) to the property at issue. The Board addressed this matter at a meeting held on May 16, 2012, at which it permitted public comment on issues that had not already been discussed. Appellant Guenther spoke at this meeting expressing concerns regarding storm-water. The Board, with Appellant Rinderknecht abstaining, voted to deny the appeal. Dearborn filed an administrative appeal from this decision with the trial court.[5]

{¶7} The trial court consolidated the administrative appeals filed from the February 2012 and May 2012 decisions of the Board. The trial court determined that Loc.Ord. 1139.06(c) applied to the property at issue, but it concluded that the Board did not have discretion to deny the permit on factors other than size and location. The trial court discussed "location" for purposes of Loc.Ord. 1139.06(c) by reference to the setback provisions contained in the local ordinances.[6] The trial court remanded the case to the Board for a hearing as to the size and location of the building.[7]

{¶8} At hearing before the Board, the Chairperson indicated that "Dearborn [] is only before the [B]oard to have us approve the size and location of the building, and we are confined and constrained to those parameters only." At the meeting, counsel for Dearborn and Mr.

---

[4] The trial court records from the appeal of the February, 2012 Board decision are not included in the record of the present appeal.

[5] The trial court records from the administrative appeal of the Board's May, 2012 decision were not included as part of the record in the present appeal.

[6] The court further concluded that, from the Board's records, the proposed building met the setback requirements.

[7] The trial court's decision is included as part of the Board's record of proceedings in the present appeal.

Wojtila again spoke, and the Board permitted comments from citizens, but it requested that the comments be limited to one minute, and that they not repeat comments already made at the prior meetings. All of the Residents, except for Maryellen Guenther, spoke at the meeting. Thereafter, the Board approved Dearborn's application. The Residents filed an administrative appeal to the trial court, naming the Board as the sole defendant. Thereafter, Dearborn moved to intervene in the administrative appeal, and the trial court granted the motion. Dearborn and the Board filed a joint motion to dismiss the administrative appeal for lack of standing, which the trial court denied. The trial court then affirmed the decision of the Board.

{¶9} The Residents now appeal to this Court, raising three assignments of error for our review. The Board and Dearborn have filed separate Appellee Briefs, and, in its brief, Dearborn raises one cross-assignment of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ABUSED ITS DISCRETION BY AFFIRMING THE BOARD'S DECISION WHERE [THE RESIDENTS] WERE DENIED THEIR RIGHT [TO] MEANINGFULLY [] PARTICIPATE IN THE PUBLIC MEETING AS GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶10} In their first assignment of error, the Residents maintain that the Board violated their First and Fourteenth Amendment rights by denying them the right to meaningfully participate at the public meeting following the remand of this case by the trial court. We disagree.

{¶11} Initially, we believe it prudent to emphasize that this case presents facts dissimilar to many cases involving administrative appeals from zoning board decisions. Here, Dearborn sought to develop land *in compliance with* the local zoning provisions. The record does not

indicate that Dearborn at any time sought a variance. Instead, it was the Residents who wished to restrict Dearborn's use of the land through the proceedings before the Board.

{¶12} The Residents filed the instant case as an administrative appeal pursuant to R.C. 2506.01, et seq. "R.C. Chapter 2506 governs appeals of decisions by agencies of political subdivisions, such as township zoning boards." *Stace Dev., Inc. v. Wellington Twp. Bd. of Zoning Appeals*, 9th Dist. Lorain No. 04CA008619, 2005-Ohio-4798, ¶ 6. *See, e.g., Earth 'N Wood Prods., Inc. v. City of Akron Bd. of Zoning Appeals*, 9th Dist. Summit No. 21279, 2003-Ohio-1801, ¶ 8. "Under R.C. 2506.01, a party may appeal a local agency's final administrative decision to the applicable court of common pleas." *Stace* at ¶ 7. "Then, R.C. 2506.04 empowers the court of common pleas to act with certain, limited appellate authority as to the challenged administrative decision." *Id. See Summit Cty. Bd. of Health v. Pearson*, 9th Dist. Summit No. 22194, 2005-Ohio-2964, ¶ 7. "Under this construct, the common pleas court may act on particular errors; those which it finds to be: '[1.] unconstitutional, [2.] illegal, [3.] arbitrary, [3.] capricious, [4.] unreasonable, or [5.] unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.'" *Stace* at ¶ 7, quoting R.C. 2506.04.

{¶13} "Under R.C. 2506.04, a party may appeal to this Court only as to 'questions of law' arising from the common pleas court's R.C. 2506.04 review of the agency's decision." *Stace* at ¶ 6. *See Cabassa v. Elyria Twp.*, 9th Dist. Lorain No. 04CA008519, 2005-Ohio-713, ¶ 6. "This Court reviews questions of law de novo." *Stace* at ¶ 6, citing *Maumee v. Public Util. Comm.*, 101 Ohio St.3d 54, 2004-Ohio-7, ¶ 3

{¶14} Here, the Residents challenge the Board's restrictions on their speech at the public meeting following remand by the trial court. At that meeting, Mr. Wojtila, explained how the size and location of the proposed building met the requirements of the local ordinances, and he

explained other concessions that Dearborn was prepared to make, although he stated that it was not required to do so. The transcript notes that during questions directed to Mr. Wojtila, there was "[t]alking occurring among the audience[,]" at which point the following exchange occurred between the Board's Chairperson and Attorney Michael Duff[8]:

> CHAIRPERSON JANCURA: Mr. Duff[], we have a court reporter, and your conversations are interrupting this court reporter's ability to take the proceedings. So if you continue to have discussion, you do it outside.
>
> MR. DUFF[]: We will keep it low.
>
> CHAIRPERSON JANCURA: No. You need to do it outside of closed doors because you are interrupting this man's ability to hear and to correctly get a transcript of this meeting. This man must sit here and take every little word that we say, and I want to make sure he can do his job properly.

{¶15} After Dearborn's presentation to the Board, the Chairperson then opened the proceedings for public comment, limited to one minute, on issues not already addressed to the Board. The City's law director, David Graves, then commented on an issue pertaining to Appellant Rinderknecht, as follows:

> MR. GRAVES: Madam Chair[person], as I discussed with Mr. Rinderknec[h]t, he is a member of the Board, it is not enough to abstain from voting, and you cannot participate in any of the discussions or deliberations on this matter.
>
> So as to avoid the appearance that you are trying to influence the Board and jeopardize the integrity of these proceedings my advice to you is not participate in these proceedings. You have raised a conflict, and you are a member of this Board.
>
> MR. RINDERKNEC[H]T: I am appearing as a private citizen, Law Director Graves, and if this is a conflict of interest I will resign from the Board at this moment and proceed as a private citizen. I consider myself withdrawn from the Board. I have now resigned.
>
> Does that clear up the conflict?

---

[8] The transcript spells Mr. Duff's name as "Duffy[.]" However, the record makes clear, through the Board minutes and the filings of the parties, that the individual referred to as "Mr. Duffy" in the transcript is Attorney Michael Duff, who serves as co-counsel for the Residents in the present appeal.

MR. GRAVES: No. No, it does not, and I think if you proceed, you are jeopardizing the integrity of these proceedings.

MR. HUNT [(counsel for Dearborn)]: Madam Chair[person], I object to the testimony from this witness for the same reasons.

CHAIRPERSON JANCURA: Mr. Graves, should I ask that his testimony be stricken from the record as it is a direct conflict?

CONCERNED CITIZEN: He just resigned.

MR. DUFF[]: He just resigned. It is not a direct conflict.

MR. GRAVES: He has asked to be approved. He has to be accepted by the Mayor. He was a member of the Board up until just ten seconds ago. This could be perceived as a member of the Board who has already raised a conflict of interest, trying to steer the direction of the Board.

MR. RINDERKNEC[H]T: Well, Law Director Graves, you must be psychic, because you have no idea what I am about to say.

MR. GRAVES: It doesn't matter. Any participation – and there are plenty decisions –

CONCERNED CITIZEN: He participated at the last meeting.

MR. GRAVES: No, he did not.

CONCERNED CITIZEN: Yes, he did.

CHAIRPERSON JANCURA: Excuse me. At the time Mr. Rinderknec[h]t presented or spoke –

MR. GRAVES: He was not on the Board at that time.

MR. GRAVES: He currently –

MR. DUFF[]: He has resigned.

CHAIRPERSON JANCURA: Mr. Rinderknec[h]t was not on the Board the last time we spoke on this matter. In November of 2011, he was not a member of this Board.

MR. DUFF[]: He is not any longer, he just resigned.

CHAIRPERSON JANCURA: Yes, he still is on.

MR. DUFF[]: But he just resigned.

CHAIRPERSON JANCURA: Attorney Duff[], you do not know the internal workings of this Board. He cannot just resign like that. There is a procedure that we have to not be on the Board any more, and Mr. Rinderknec[h]t has not met that standard. He is still a member of this Board.

MR. DUFF[]: Don't you think it is wiser –

CHAIRPERSON JANCURA: Attorney Duff[]–

MR. DUFF[]: Don't you think it is wiser to listen to him? Let him have his say. He is a concerned property owner.

CHAIRPERSON JANCURA: He is not to appear before this Board.

MAYOR BRING: If this continues, I will call the police, and have you removed. (Directed to Mr. Duff[].)

MR. DUFF[]: Call the police.

MAYOR BRING: Then I will.

MR. DUFF[]: Yeah. Good, Dennis. Good, Dennis.

MAYOR BRING: You are out of hand.

MR. DUFF[]: You are out of hand.

{¶16} Thereafter, Appellant Karl Guenther[9] addressed the Board as follows:

MR. GU[E]NTHER: My question is, you know, we come here tonight and, I know I only have a minute to talk, which is wrong. We asked about looking at this stuff, and this presentation was for the members only. So you invite us here with a letter to ask if we can be part of this. Now we only have a minute to talk.

The road is changed to now. Can the trucks handle this and everything else? You are bullying us. You are not even allowing us to talk, and I feel it is very wrong. This would not be happening in Bay Village, Westlake, nowhere.

The old administration should have never allowed this to happen. I understand Mr. Kolleda should have a right to sell his property. He has never been offered anything or he has been. It should have been zoned residential, and what are we going to do with the shoreway that we developed, that we are developing?

To put Dollar General spot zoning I think it is wrong.

---

[9] Mr. Guenther's surname is spelled "Gunther" in the transcript of a Board hearing; however, the parties' filings and the Board minutes spell his surname "Guenther[.]" This Court will utilize the latter spelling.

CHAIRPERSON JANCURA: Sir, I understand your concerns, and I can completely appreciate them. But we are not allowed to address that matter.

MR. GU[E]NTHER: I understand that. I mean it is just wrong. We come here to talk, and you only give me a minute to talk. It is like we don't have a chance, so I guess you guys already got your mind made up.

MAYOR BRING: Madam Chair[person], if you want, I will have Attorney Duff[] removed. Otherwise, we are going too –

CHAIRPERSON JANCURA: I would like Attorney Duff[] removed. He is being extremely disrespectful.

MR. DUFF[]: I am not. Dennis just said everybody should calm down, which is true.

CHAIRPERSON JANCURA: As an attorney –

MR. DUFF[]: Wait, wait, I want to hear from David. I want to hear from the Law Director. David, what do you say?

MR. GRAVES: I don't have any authority.

MR. DUFF[]: Dennis, you are going to have me removed?

MAYOR BRING: Yes, I am.

MR. DUFF[]: Dennis, I am so ashamed of you. I am ashamed of you.

CONCERNED CITIZEN: This is insane.

MR. DUFF[]: Shame on you, buddy.

{¶17} It is not clear from the transcript what was transpiring in the audience when the Mayor offered to have Mr. Duff removed. It is unclear whether Mr. Duff was removed, as a later statement is attributed to him in the transcript, but this statement is attributed to the Building Inspector in the Board's minutes.

{¶18} Appellant Moussa then addressed the Board, at which point the Chairperson indicated that he had already addressed the Board on this issue at a previous meeting. The Chairperson indicated that the Board could not address the concerns he had previously expressed

because it was not within the Board's purview.  The Chairperson reiterated that "the purview of this meeting is the size and location of this building."  The following exchange then occurred:

> MR. MOUSSA: What's the purpose of this meeting if you are not listening to – what good is this meeting if not listening to the concerned citizens?
>
> CHAIRPERSON JANCURA: Because we cannot do anything about your concerns.
>
> MR. MOUSSA: Really?
>
> CHAIRPERSON JANCURA: No, we cannot.
>
> MR. MOUSSA: I live in this City.  I pay taxes in the City.  My house value will drop because of this.  This is – my kids will suffer continuous from cars and trucks.
>
> CHAIRPERSON JANCURA: Then move from Sheffield Lake.  If you don't like –
>
> MR. MOUSSA: Why don't you move from Sheffield Lake?
>
> CHAIRPERSON JANCURA: I don't – it doesn't bother me, the Dollar General.

{¶19} Mr. Moussa then continued, raising concerns about whether the road was sufficient for a retail store and raising concerns as to the effect of a retail establishment on the sewers and storm waters.  The Chairperson and the Law Director indicated that the Board was not reviewing those matters.  Mr. Moussa then requested to inquire of the City Engineer into these matters, and the Chairperson stated that he could not do so at that time, because those issues were not before the Board.  The following exchange then took place:

> MR. MOUSSA: Why can I not address him right now?
>
> CHAIRPERSON JANCURA: Because it is not within the purview of the Board.  That's not the reason for the meeting.
>
> You can have a seat.
>
> MR. MOUSSA: Oh, really?
>
> CHAIRPERSON JANCURA: We have a concerned citizen.  Will you please come to the podium, and state your name?

Mr. Moussa you are dismissed. Thank you.

{¶20} Appellant Doick then addressed the Board, and questioned Mr. Wojtila as to the hours of operation of the store, and inquired as to whether deliveries were made solely within the hours of operation. Counsel for Dearborn objected to the questions as irrelevant, but indicated that Mr. Wojtila could likely answer the question, which he did. Mr. Doick responded "Thank you[,]" and asked no more questions.

{¶21} Appellant Wittman then addressed the Board and asked Mr. Wojtila if delivery trucks would be left running and idling in between deliveries, and Mr. Wojtila responded that he was unaware of idling delivery trucks. The law director also indicated that City ordinances pertaining to unreasonable noise likely covered the issue of idling trucks. Mr. Wittman responded, "Thank you[,]" and made no further inquiry or comment.

{¶22} In their brief, the Residents challenge the time limitation and subject restrictions placed on their comments as unconstitutional. Although the Residents have structured their argument as collectively being denied their Constitutional rights, our review of the record indicates that their arguments on appeal do not apply with equal force to each of them. Based upon each resident's individual participation, or lack thereof, at the meeting, we must limit our discussion as follows. First, as to Appellant Maryellen Guenther, nowhere in the transcript can we discern that she was prevented from speaking, and the Residents have cited no portion of the transcript where this can be located. Accordingly, to the extent that the Residents' first assignment of error argues that Ms. Guenther's constitutional rights were violated, it is overruled. *See* App.R. 16(A)(7).

{¶23} Next, as to Appellant Rinderknecht, we can locate nothing in the record from which we could discern that he was prevented from speaking on any basis other than that

advanced by the Chairperson and the Law Director: that he was a member of the Board until the Mayor accepted his resignation, and his involvement as a private citizen in this matter could taint the proceedings. The Residents do not develop an argument addressing Appellant Rinderknecht's unique circumstances in this case, and whether the reason advanced for the restriction on his speech constituted reversible error. *See* App.R. 16(A)(7). Accordingly, to the extent the Residents maintain that his Constitutional rights were violated, their first assignment of error is overruled.

{¶24} In addition, in their brief, the Residents reference the Chairperson "acting in concert with the Mayor of Sheffield Lake – <u>who had no authority to act for the Board</u> – schem[ing] to call the Sheffield Lake police to remove a respected member of the bar from the meeting on the fallacious grounds that he was being 'disrespectful' in some unspecified manner." (Emphasis sic.) This appears to be a reference to the exchange between Mr. Duff, the Chairperson, and the Mayor. However, Mr. Duff is not a party to this appeal. The Residents have not developed an argument as to how the exchange between Mr. Duff, the Chairperson, and the Mayor violated the due process rights of the Residents named in this appeal, and we decline to create and argument on their behalf. *See* App.R. 16(A)(7).

{¶25} Further, although the Residents maintain in their brief that "[m]ultiple complaints were made about the fact that insufficient time was provided[,]" they do not point to any portion of the record to support this statement. *See* App.R. 16(A)(7). Our review of the record indicates that only Mr. Guenther complained about the time limitations. Further, the Residents have not directed this Court to any objection made by them to the Board as to the restrictions on the subject matter. *See* App.R. 16(A)(7). From our review of the record, we can only discern an objection to the restriction of the subject matter being raised by Mr. Moussa. Mr. Doick and Mr.

Wittman raised no objection to the time or subject matter limitations. *See Smith v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. Summit No. 25575, 2012-Ohio-1175, ¶ 33. Therefore, to the extent that the Residents challenge the limitations placed on Mr. Doick and Mr. Wittman, their first assignment of error is overruled.

{¶26} Based upon the foregoing, our discussion of the first assignment of error is limited to Mr. Guenther and Mr. Moussa. We will address Mr. Guenther's and Mr. Moussa's arguments pertaining to their due process rights and First Amendment rights separately.

Due Process Rights

{¶27} "Before the state may deprive a person of a property interest, it must provide procedural due process consisting of notice and a meaningful opportunity to be heard." *Ohio Assn. of Pub. School Emps. v. Lakewood Cty. School Dist. Bd. of Edn.*, 68 Ohio St.3d 175, 176 (1994), citing *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532 (1985). "The inquiry into what process is due depends on the facts of each case." *Ohio Assn. of Pub. School Emps.* at 177, citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987). *Ohio Dept. of Transp. v. Storage World, Inc.*, 9th Dist. Medina No. 11CA0002-M, 2012-Ohio-4437, ¶ 12.

{¶28} Here, Mr. Guenther and Mr. Moussa argue that the limitations on their comments denied them a meaningful opportunity to be heard. However, they have not identified in what way the public meeting would have "deprived" them of a property interest, so as to implicate their right to a meaningful opportunity to be heard. *See Ohio Assn. of Pub. School Emps.* at 177. Even were we to assume that Mr. Guenther and Mr. Moussa had a protected property interest in the Board's determination on these matters, the hearing was specifically limited to the size and location of the building. Neither of them assert that they were denied a meaningful opportunity

to be heard *on those issues*. *Good News Club v. Milford Cent. School*, 533 U.S. 98, 106-107 (2001) (State may properly limit discussion to agenda items).

{¶29} Accordingly, to the extent that the Residents maintain that their due process rights were violated, their first assignment of error is overruled.

Freedom of Speech

{¶30} With respect to whether the Board's actions violated Mr. Guenther's or Mr. Moussa's First Amendment rights, the standard applicable to government regulation of speech depends on the nature of the forum. *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983); *Good News Club* at 106; *Dayton v. Esrati*, 125 Ohio App.3d 60, 72 (2d Dist.1997). Here, the Residents indicate that the public meeting could be viewed as a "limited public forum" for purposes of a First Amendment analysis, and the Board and Dearborn do not dispute this classification. *See Esrati* at 72 ("Limited public fora consist of public property that the government has opened for use by the public as a place for expressive activity."). As the parties have structured their arguments in this manner, we will review this issue by assuming, without deciding, that the public meeting amounted to a "limited public forum[.]"

{¶31} In a limited public forum, "[t]he State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" *Good News Club* at 106, quoting *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). "The State's power to restrict speech, however, is not without limits. The restriction must not discriminate against speech on the basis of viewpoint * * * and the restriction must be reasonable in light of the purpose served by the forum." (Internal quotations and citations omitted.) *Good News Club* at 106-107.

{¶32} Here, the instructions to the Board on remand specifically limited its consideration at the hearing to whether the plans met the size and location provisions of the zoning ordinances. We conclude that it was reasonable, under these circumstances, once the evidence of the size and location provisions of the proposed building had been presented and not disputed, to limit the public comments to one minute. *See id.* It was also reasonable to require the comments pertain to the size and location of the building, and not to issues already addressed. *See id.*

{¶33} Our review of the record does not indicate that any limitation was placed on Mr. Guenther or Mr. Moussa which discriminated against their speech on the basis of their points of view. Instead, the limitations appear to have been based upon whether the issues had already been discussed and whether the issues discussed were on topic. Further, although the Residents appear to challenge the Chairperson's remarks to Mr. Moussa, where she suggested that he could move from Sheffield Lake and later advised him that he was "dismissed[,]" we cannot discern in what way her remarks to him limited his speech on the topic issues of size and location. Instead, her comments, when read in context, appear to attempt to limit Mr. Moussa to the issues within the Board's purview pursuant to the trial court's remand order.

{¶34} Therefore, the Residents' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT ADDRESSING WHETHER THE RECORD TENDERED BY COUNSEL FOR THE BOARD MET THE REQUIREMENTS OF R.C. 2506.02 AND WHETHER THE RECORD CONTAINED DOCUMENTS AND INFORMATION NOT CONSIDERED BY THE BOARD IN REACHING ITS MAY 15, 2013 DECISION.

{¶35} In their second assignment of error, the Residents allege that the trial court erred by not addressing issues pertaining to the administrative record below.

{¶36} R.C. 2506.02 provides:

Within forty days after filing a notice of appeal in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the officer or body from which the appeal is taken, upon the filing of a praecipe by the appellant, shall prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision. The costs of the transcript shall be taxed as a part of the costs of the appeal.

{¶37} Based upon the language of R.C. 2506.02, the Residents argue that the "Notice of Filing Transcript" was defective because it was not transmitted by the Board, it was not certified by anyone with authority to act for the Board, and it did not certify that the record contained a "complete transcript of all the original papers, testimony, and evidence offered, heard and taken into consideration in issuing the final order, adjudication, or decision." R.C. 2506.02.

{¶38} First, we note that the filing entitled "Notice of Filing Transcript" was submitted by the Law Director of Sheffield Lake on behalf of the Board, and stated that the Board gave notice "of the filing of the Transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration by the [Board] in issuing its final decision on May 15, 2013 pursuant to [R.C.] [] 2505.08 and [] 2506.02." Given the content of this Notice, we cannot discern in what way the Residents contend that Notice was not transmitted by the Board.

{¶39} The Residents' arguments pertaining to the "certify[ication]" of the administrative record appear to challenge a document entitled "Verification" that was included with the Board's record. The verification was signed by an individual named "Kay Fantauzzi" and reads as follows:

I, Kay Fantauzzi, duly appointed Clerk of Committees for the City of Sheffield Lake, hereby certify that the accompanying documents are true and exact copies of original documents contained within the records of the City of Sheffield Lake.

{¶40} The Residents maintain that Ms. Fantauzzi is not authorized to act for the Board, and that her certification was incomplete pursuant to R.C. 2506.02. However, nothing in R.C. 2506.02 requires an administrative body to include a certification of the record on transmittal to the trial court, and the Residents have offered no authority addressing any requirement of a certification of the Board's record. *See* App.R. 16(A)(7). Instead, in their reply brief, the Residents maintain that from the language of R.C. 2506.02, "[o]f necessity, the officer or body from which appeal is taken must certify that the record as transmitted is *complete* as described above." (Emphasis sic.) However, again, the Residents do not explain in what way R.C. 2506.02 requires a certification of the administrative record, and the plain language of that provision creates no express requirement. Further the Residents do not explain how they were prejudiced by the purportedly improper certification. *See Yachanin v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 99802, 2013-Ohio-4485, ¶ 23-27 (noting that R.C. 119.12, inapplicable to that case, requires a certification of an agency's record in appeals brought pursuant to that section, but, even where R.C. 119.12 does apply, the failure to properly certify does not result in reversal absent prejudice). We decline to construct an argument on their behalf. *See* App.R. 16(A)(7).

{¶41} Accordingly, the Residents' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY PERMITTING DEARBORN TO INTERVENE.

{¶42} In their third assignment of error, the Residents argue that the trial court erred in permitting Dearborn to intervene in their administrative appeal. We disagree.

{¶43} Civ.R. 24(A) provides as follows:

Upon timely application anyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶44} Here, Dearborn alleged that it had an interest in the appeal of its permit approval. However, the Residents appear to argue that Dearborn's interests were adequately represented by the Board because the primary issue on appeal pertained to whether the Board violated the Residents' due process and First Amendment rights.

{¶45} Because the Residents filed this action as an administrative appeal of the Board's decision to approve Dearborn's permit, Dearborn clearly had an interest "relating to the property or transaction that is the subject of the action[.]" *See* Civ.R. 24(A). We cannot agree that Dearborn's interests were adequately represented by the Board. The Board initially denied Dearborn's request for approval for its permit, resulting in the previous administrative appeals to the trial court. From this procedural history, where the Board and Dearborn were diametrically opposed in their positions until the trial court ordered the Board to consider only whether the size and location of the building met the requirements of the zoning ordinances, we cannot say that Dearborn's interests were adequately represented by the Board. Accordingly, the Residents' third assignment of error is overruled.

## CROSS-ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY DENYING THE JOINT MOTION TO DISMISS APPEAL FILED BY DEARBORN AND THE [BOARD].

{¶46} In its cross-assignment of error, Dearborn argues that the trial court erred by failing to grant its motion to dismiss the administrative appeal. The Residents respond that this argument is not properly raised as a cross-assignment of error.

{¶47} Assuming without deciding that this challenge is properly raised as a cross-assignment of error, Dearborn has specifically asserted this cross-assignment of error as conditional for our consideration only if we were to sustain one of the Residents' assignments of error. In light of our disposition of the appeal, the purported cross-assignment of error is moot, and we decline to address it. *See* App.R. 16(A)(7).

## III.

{¶48} The Residents' assignments of error are overruled. The cross-assignment of error is moot. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CARLA MOORE
FOR THE COURT

HENSAL, P.J.
SCHAFER, J.
CONCUR

APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellants.

DAVID M. GRAVES, Attorney at Law, for Appellee.